ISAIAH LETSON v. BENJAMIN S. REED AND GEORGE
W. ABELL.

*Bona fide purchaser—When good faith is not presumable.*

Purchasers of land which has been fraudulently transferred to their grantor must establish the good faith of their purchase, and it cannot be presumed.

Appeal from Cass. Submitted Oct. 28. Decided Nov. 10.

BILL to set aside deed. Defendant Reed appeals. Affirmed.

*Edward Bacon* for complainant.

*O. W. Coolidge* and *J. A. Kellogg* for defendants.

MARSTON, C. J. That Letson was most grossly defrauded by Abell in their land trade has not been and could not be controverted. It but remains to ascertain whether Reed is a *bona fide* purchaser from Abell, and we are of opinion that he has not shown himself to be such. This court has distinctly held that where a fraud has been committed, third parties in order to build up a right thereunder must establish the fact that they are *bona fide* purchasers and that this cannot be inferred from showing a purchase alone. *Berry v. Whitney* 40 Mich. 71.

There is evidence tending to show that Reed was such a purchaser, but it would be far from satisfactory even if standing alone, and when considered in the light of the surrounding circumstances, its effect as such is entirely destroyed.

The exchange of conveyances between Letson and Abell was made December 24, 1877. On January 2, 1878, Letson, suspecting that he had been defrauded, went to Pokagon, saw Abell and requested him to trade back farms which Abell agreed to do, and the next day at Niles was agreed upon as the time and place for such exchange.

After this interview and on the same day, January 2d, Abell conveyed the Letson farm to defendant Reed subject to two mortgages thereon which Reed was to pay as part of the consideration. Abell was indebted to Reed in the sum of $374.84 and to Reed & Post $25—these sums were to be deducted and the balance was to be paid to Abell. One of the mortgages had been given by Letson and there was about $71 due thereon ; The other had been given by Abell to one Newton, but not recorded, as his, Newton's, share for assisting Abell in making the trade with Letson.

Reed before making the purchase did not go to see the land, but claims he had some knowledge of its location and value ; he examined an abstract of title furnished him which did not show the Newton mortgage, or the amount due on the mortgage given by Letson ; he took Abell's statement as to the amount due or to become due upon these mortgages, and assumed payment thereof ; and upon the same day gave to Abell $240 for him to apply and pay upon the Newton mortgage, and Abell was given the deed of conveyance to Reed, to take on the same day and have recorded, and at the same time $25 was paid by Reed to Abell on the purchase.

This is Reed's version of the transaction, and of what was done on January 2d, and it shows pretty clearly that Reed either had more confidence in the honesty and integrity of Abell than his previous acquaintance would have justified, or that he did not exercise that due care and prudence which men under ordinary circumstances would be expected to. While such a transaction is possible it is not according to the usual course of business and is highly improbable.

There is evidence tending to show that on January 3d Reed had notice of the fraudulent character of the transaction between Letson and Abell, but whether on that day or later, we are of opinion that he has not shown that he in good faith paid Abell, or discharged his claim against him, or that he legally assumed the payment of any valid subsisting encumbrance on the land over and above the amount of the Letson mortgage—$71—and that still remains a lien upon the land.

It follows that the decree of the court below must be affirmed with costs.

The other Justices concurred.