ADOLPH KRUSE, *Appellee*, v. J. E. CONKLIN, *Appellant*.

No. 15,970.

### SYLLABUS BY THE COURT.

1. UNRECORDED CONVEYANCE—*Rights of Subsequent Purchasers.* An unrecorded conveyance of real estate is good except as against a person who purchases without notice thereof and for a valuable consideration.

2. ———— *Payment of Valuable Consideration by Second Purchaser—Burden of Proof.* Where, after the execution of a conveyance which is not recorded, the grantor conveys the same property to another, the latter, in order to be protected by the recording act, must assume the burden of proving that he was a purchaser for a valuable consideration. Recitals in the conveyance itself of the payment of consideration are no evidence thereof as against strangers.

3. ———— *Presumption that Second Purchaser Acted in Good Faith and without Notice.* As soon as it appears that a valuable consideration has been paid the presumption arises that the purchaser acted in good faith and without notice of the rights of those who claim under the unrecorded deed. Until there is proof that he paid a valuable consideration there is no presumption of good faith.

Appeal from Kiowa district court; EDWARD H. MADISON, judge *pro tem.* Opinion filed May 7, 1910. Reversed.

### STATEMENT.

THIS was an action in ejectment to recover the possession of 160 acres of land in Kiowa county. After issues were joined a jury was waived. The court made findings of fact which are, in substance:

(1) C. L. Davidson held a mortgage on the land, dated July 2, 1887, payable five years after date.

(2) Soon after the execution of the mortgage the land was abandoned by the owner of the fee.

(3) In 1890 the Fullington Live Stock Company included the land in a large pasture owned by it, in which there were several tracts of land to which it

had no title. The company leased the land from David-son, the owner of the mortgage, and paid rent to him for several years; afterward it purchased the note and mortgage from him and retained possession of the land under the mortgage, paying rent to no one. The mortgage debt has never been paid.

(4) On March 3, 1900, the Fullington Live Stock Company was adjudged a bankrupt, and J. E. Conklin of Wichita became the trustee of the estate and took possession of the property of the bankrupt, including the pasture in which the land in question was located. Afterward the trustee leased the pasture to W. G. Fairchild for one year. In April, 1901, some difficulties arose between the trustee and Fairchild and J. E. Conklin, the defendant herein. J. E. Conklin, the trustee, and J. E. Conklin, the defendant, are different persons. The trustee began proceedings in the federal court to oust Fairchild and the defendant from the land. While these proceedings were pending Conklin, the defendant, made an offer to the court to purchase all the interest of the trustee in the lands of the bankrupt for the sum of $3000. This offer was accepted by the court and the trustee ordered to convey all the interest of the bankrupt in the lands by a deed, which should be in substance and effect a quitclaim deed. Conklin, the trustee, was not present when the offer was made, nor was he consulted about it or advised of it at the time.

(5) In pursuance of this order W. G. Fairchild, attorney for the defendant, prepared a deed to be executed by the trustee, and included therein the land in question. The trustee afterward executed the deed as prepared by Fairchild, with the description of this land included, and delivered the same to the defendant. The trustee made very little examination of the deed to ascertain its contents.

(6) At the time the trustee qualified he took possession of the note and mortgage which had been pur-

chased by the Fullington Live Stock Company from the mortgagee, and listed the same as personal property, had the same appraised as such, and, in May, 1900, offered the mortgage and note for sale at public auction, in pursuance of the court's order to sell the personal property of the bankrupt. But no sale of the note and mortgage was made, on account of the lack of bidders. At the time of the execution of the deed by the trustee conveying the interest of the bankrupt in the lands to the defendant the note and mortgage were in the possession of the trustee, and no demand of any kind was made on him personally for the delivery of the note and mortgage to the defendant. At the time of the preparation of the deed some conversation occurred between the attorney for the trustee and W. G. Fairchild, in which it was said that the mortgage had been mislaid, could not be found at the time; and it was agreed between the attorneys that the insertion of the description of the land in the deed would convey the title of the trustee.

(7) The defendant has been in actual and exclusive possession of the land under his deed from the trustee from the 22d of April, 1901, until the present time. He has had the same inclosed in a large pasture with other lands, some of which are owned by him and some of which he has leased from the owners. The deed from the trustee was not recorded until the 3d day of December, 1901.

(8) In May, 1901, J. E. Conklin, trustee, being in the possession of the note and mortgage, assigned and delivered the same to one Cyrus Ritchie. There is no evidence as to the actual consideration for the assignment or any evidence showing whether Ritchie had actual notice of the trustee's deed to the defendant. Soon after the assignment to him of the note and mortgage Ritchie assigned and delivered the same to M. P. Hocking, and there is no evidence as to the actual consideration paid by Hocking or whether he

had actual notice of the trustee's deed. In July, 1901, Hocking brought an action to foreclose the mortgage against the Fullington Live Stock Company and the original mortgagors and the former owner of the fee. He obtained a judgment of foreclosure, and purchased the land at sheriff's sale September 20, 1902. Whatever title Hocking took by the sheriff's deed now belongs to the plaintiff, Kruse.

As conclusions of law the court found:

"(1) The Fullington Live Stock Company was a mortgagee in the possession of the land in controversy after the purchase of the note and mortgage from C. L. Davidson.

"(2) The trustee of the estate of the Fullington Live Stock Company, after he took possession of the ranch and pastures of the said company, was a mortgagee in possession of the said land.

"(3) By the execution and delivery of the trustee's deed the note and mortgage were assigned to J. E. Conklin, defendant.

"(4) The defendant, Conklin, by failing to obtain possession of the note and mortgage from the trustee and withholding his deed from record, was guilty of negligence.

"(5) Cyrus Ritchie was a purchaser of the note and mortgage for value, and without notice of the interests of the defendant, Conklin.

"(6) The plaintiff is entitled to recover the possession of the land in controversy."

In accordance with these findings judgment was rendered for the plaintiff, and the defendant appeals.

*W. G. Fairchild,* for the appellant; *H. S. Lewis,* of counsel.

*J. W. Davis,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendant challenges the correctness of the fourth, fifth and sixth conclusions of law. The challenge must be sustained. The fourth and fifth conclusions upon which the court predicates the judg-

ment in substance amount to this: Cyrus Ritchie having purchased the note and mortgage for value and without notice, he and the plaintiff, who claims under him, are protected by the recording act, and because of the failure of the defendant to record his deed the plaintiff's title is superior. But that part of the fifth conclusion of law which holds that Ritchie purchased the note and mortgage for value is not supported by the findings of fact. In the eighth finding of fact it is said: "There is no evidence as to the actual consideration for said assignment, and no evidence as to whether Ritchie had actual notice of the conveyance to Conklin, defendant." The court's error was holding that, in the absence of any evidence to the contrary, Ritchie must be presumed to have purchased for value and without notice. While there is some conflict in the authorities, the rule appears to be settled by the better reasoning as well as the weight of authority that the burden of proof as to the payment of a valuable consideration rests upon the subsequent purchaser. (*Coon v. Browning,* 10 Kan. 85; *Morris v. Daniels,* 35 Ohio St. 406; *Roseman et al. v. Miller,* 84 Ill. 297; *J. D. and D. Halstead v. the President, Directors and Company of the Bank of Kentucky,* 4 J. J. Mar. [Ky.] *554; *Lake v. Hancock, use of Payne,* 38 Fla. 53; *Nickerson v. Wells-Stone Mercantile Co.,* 71 Minn. 230; 23 A. & E. Encycl. of L. 522, 523; 24 A. & E. Encycl. of L. 140.)

Although the language of our recording act has been changed since the decision in *Coon v. Browning,* supra, the present statute has exactly the same force and effect as the former. This, in effect, was held in *Holden v. Garrett,* 23 Kan. 98. The reason of the rule that the burden of proof as to the payment of a valuable consideration rests upon a subsequent purchaser is that while the recital in a deed that the consideration has been paid is *prima facie* evidence, as between the parties, it is no evidence against a stranger. (*King v. Mead,* 60 Kan. 539; *Doty v. Bitner,* post.)

Other reasons given for the rule are that the knowledge and means of proving the consideration are more reasonably and naturally in the possession of the grantee and the difficulty which ordinarily arises where an attempt is made to prove the negative rather than the affirmative of a proposition.

As to notice, it will be observed that the rule is equally well established that the burden is on the one who claims under the prior unrecorded deed. At least, this is true as soon as it is established that the subsequent purchaser parted with value. Many of the courts take the view that the burden of proof as to the good faith of the subsequent purchaser shifts as soon as the last purchaser has shown that he paid a valuable consideration. (*Morris v. Daniels,* 35 Ohio St. 406; *Iron Co. v. Iron Co., et al.,* 105 Iowa 624; 23 A. & E. Encycl. of L. 523, and cases cited in note.) As soon as it appears that a valuable consideration has been paid the presumption arises that the purchaser acted in good faith and without notice of the rights of the parties who claim under the unrecorded deed. In *Morris v. Daniels,* supra, it was said:

"The rule in such case is entirely analogous to that which obtains in relation to commercial paper, and rests on the same principle. The indorsee of negotiable paper before due must prove the payment of a valuable consideration as soon as it is shown that the instrument was made without consideration, or was obtained by fraud." (Page 417.)

In the present case the court assumed, in the absence of evidence to the contrary, that the subsequent purchaser paid value and took the title to the note and mortgage without notice of the defendant's interests. This was error. Until there was proof that the purchaser paid a valuable consideration there was no presumption of good faith. Of course, before the subsequent purchaser can take advantage of the failure of the prior purchaser to record his deed, he must be

himself a purchaser for value and without notice. (*Grocer Co. v. Alleman,* 81 Kan. 543; *Morris v. Wicks,* 81 Kan. 790; *Doty v. Bitner,* post.)

From the findings of fact it appears that the bankruptcy court ordered the note and mortgage sold as personal property at public sale in May, 1900, and that it was offered for sale at that time in pursuance of the court's order, but no sale of it was made because of lack of bidders. It does not appear by what authority the trustee proceeded to sell the same more than a year afterward at private sale, and the question of his authority to sell it when he did may have a bearing in determining the good faith of the plaintiff in the transaction. The whole case turns upon this proposition, and, since there was no evidence to support the conclusion of law that the plaintiff purchased for a valuable consideration and without notice, the judgment must be reversed and a new trial ordered.