A. L. TINNIN & J. B. TINNIN *v.* S. A. BROWN ET AL.

[53 South. 780.]

1. ESTOPPEL. *Common source of title. Agreement. Defective acknowledgment. Conveyance by co-partner of firm property. Acknowledgment of deed. Co-partner. Authority. Bona fide purchaser for value. Volunteer. Nominal consideration. Improvements.*

2. ESTOPPEL. *Common source of title. Agreement.*

An agreement between the parties to a suit that a certain party was the common source of title of the lands in controversy, means no more than that such party was once such common source of title and does not preclude the defendant from showing that the title of such party has come to him through a paramount valid tax title.

3. DEFECTIVE ACKNOWLEDGMENT. *Constructive notice.*

Where the acknowledgment of a deed is fatally defective it is not entitled to record and is not constructive notice to subsequent purchasers.

4. CONVEYANCE BY CO-PARTNER OF FIRM PROPERTY.

A partner who executes a deed to firm realty in the firm name, conveys by such deed, only his individual interest, unless his authority to execute for the firm affirmatively appear.

5. ACKNOWLEDGMENT OF DEED. *Co-partner. Authority.*

One partner cannot acknowledge a deed for a partnership unless he has authority to do so and this authority must affirmatively appear; authority to make and acknowledge a deed not being presumed.

6. BONA FIDE PURCHASER FOR VALUE.

  No one can claim the protection afforded an innocent purchaser for value, who has not paid value within the meaning of the law on that subject.

7. VOLUNTEER.

  A mere volunteer cannot claim relief on the ground that he is a bona fide purchaser for a valuable consideration.

8. NOMINAL CONSIDERATION.

  The fact that only one dollar is paid for property shown to be worth fifteen hundred dollars manifests that the dollar was a purely nominal consideration and does not make such purchaser an innocent purchaser for value.

9. IMPROVEMENTS.

  A party claiming land under two different titles, when sued for the same, is not precluded from claiming improvements under the other because he has notice that one of them is defective.

FROM the chancery court of Lauderdale county.

HON. SAMUEL WHITMAN, Chancellor.

This was a suit by S. A. Brown and others against A. L. Tinnin and J. B. Tinnin.

In the year 1865, F. M. Brown was the owner of the lands in controversy, and in the year 1878 he conveyed the land to his wife Charlotte M. Brown; she died in March, 1880 and F. M. Brown married a second time. On January 20, 1887, F. M. Brown and his second wife, E. T. Brown, conveyed the lands in controversy to H. C. Smith & Company, who in turn conveyed the lands to appellants A. L. Tinnin and J. B. Tinnin. F. M. Brown died in the year 1904.

S. A. Brown et al., the appellees here, complainants in the court below, are the children of F. M. Brown and his first wife, Charlotte M. Brown. In their bill filed in this case it was alleged that the legal title to the lands in controversy was in their mother, Charlotte M. Brown, and that their father having conveyed the lands to their mother, Charlotte M. Brown, who died prior to

the adoption of the Code of 1880, had only a life estate in the lands as tenant by courtesy, and that the life estate having expired, they had a fee simple title as heirs of their mother, Charlotte M. Brown.

At the trial it was 'shown that the appellants, A. L. Tinnin and J. B. Tinnin, claim title not only from F. M. Brown and his second wife, E. T. Brown, but through M. Lowenstein & Brother, who it appears purchased the land in 1876, through the auditor from the state; the land having been sold for taxes in the year 1875. On . the 29th day of March, 1879, Lowenstein & Brother attempted to convey the title to the lands in controversy to T. C. Kinard by a conveyance, which reads as follows:

"M. Lowenstein & Bro. to T. C. Kinard. Quitclaim deed. Filed for record Jany. 14th, 1885, at 3 o'clock p. m. Recorded Jany. 14th, 1885.. McRae Mosby, Clerk, by B. V. White, D. C.

"In consideration of two hundred and twenty-nine dollars, we convey to T. C. Kinard the land described as W. ½ of N. E. ¼ and E. ½ of N. W. ¼, Sec. 11, T. 7, R. 16 E., containing one hundred and sixty acres more or less. Witness our signatures the 29th day of March, 1879. M. Lowenstein & Bro.

State of Mississippi, Lauderdale county. Personally appeared before me, Wm. S. Patton, justice of the peace of said county, the above named M. Lowenstein & Bro., who acknowledged that they signed and delivered the foregoing deed on the day and year therein mentioned as their act and deed. Given under my hand this 14th day of Jany., A. D. 1885. Wm. S. Patton, J. P."

In the year 1885, T. C. Kinard conveyed the lands to F. M. Brown; in the year 1905, A. L. Tinnin and J. B. Tinnin, appellants here, respondents in the court below, obtained a conveyance of the lands in controversy by a quitclaim deed from the heirs of the members the firm of M. Lowenstein & Brother for consideration of

one dollar.   The following agreement was entered into
by counsel on both sides, to-wit:

It is agreed that the title to the land in question is
deraigned as follows:

United States to D. B. Richardson.  D. B. Richardson
to John F. Chester.  Book A, page 195.

John F. Chester and wife to Wm. L. McDow.  Book
D, page 73.

W. L. McDow to Arthur Brown.  Book 1, page 393.

Arthur Brown to F. M. Brown.  Book K, page 542.

It is further agreed that each party claim from the
common source F. M. Brown and defendants claiming
further by adverse possession.

McBeath & Miller,

For defendants.

W. W. Lewis and F. V. Brahan,

Sols.

Filed 8th day of February, 1910.

W. R. Pistole, Clerk.

There was a decree in the court below in favor of the
complainants, S. A. Brown et al., in so far as the title
of the land was concerned, but the decree allowed to A. L.
Tinnin and J. B. Tinnin, respondents in the court below,
appellants here, the sum of five hundred and eighty-
eight dollars and eighty-four cents, for improvements
and decreed that this amount should be a lien upon the
land; from this decree A. L. Tinnin and J. B. Tinnin
prosecute this appeal and S. A. Brown et al., com-
plainants in the court below, prosecute a cross appeal,
denying that an allowance for improvements should
have been made.

*Flowers, Fletcher & Whitfield,* for appellants.

It is our contention, and we hope to show that Brown
had no title which he could convey to his wife, but that
appellants have the superior legal title and must prevail.

In order to get a start in tracing this title it is only
necessary to go back to the year 1865, and to examine

the deed on page 47 of the record in which this land was conveyed by deed of gift from Arthur and Mariah Brown to their son F. M. Brown. It is agreed between the parties here that F. M. Brown had the title by virtue of this conveyance, and that he is the common source of title. It is insisted by counsel for appellee that this agreement precludes appellant from setting up the title to which we shall presently refer, but we will consider the effect of the agreement a little later. Here we say that it is agreed all around that on December 29, 1865, F. M. Brown secured title to the land in controversy.

It would appear that no further conveyances were made affecting this property until August 10, 1876. On that date the state of Mississippi through its regular representative the auditor of public accounts conveyed this land to a partnership known as M. Lowenstein & Bro. This deed recites that the land was sold on May 17, 1875, to the state of Mississippi for taxes due, and that the same was sold to M. Lowenstein & Brother by virtue of the provisions of existing law. There seems to be no controversy here and no objection urged by counsel to the validity of this deed. It was held good by the lower court, and counsel in his brief does not assail it in any way. So that we may safely assume that this deed from the state conveyed a good title to M. Lowenstein & Brother. It is well settled in this state and elsewhere that a deed to real estate in the partnership name conveys a good title and vests the title in the members of the partnership. *Schumpert* v. *Dillard et al.,* 55 Miss. 348.

So that here we have the legal title vesting in M. Lowenstein & Brother on August 10, 1876, some years before Brown conveyed to his wife, the date of which conveyance was January 5, 1878.

The question in this case therefore for the court to ascertain is what became of this legal title thus vested

in Lowenstein & Brother. It is insisted that Brown obtained this title from one T. C. Kinard by his deed of May 20, 1885, and that Kinard obtained the title from M. Lowenstein & Brother, March 29, 1879. This would be a sound contention if the deed from Lowenstein & Brother was of any value. But most demonstrably it was not. The deed is signed by M. Lowenstein & Brother and purports to be acknowledged by M. Lowenstein & Brothers. It seems to be admitted by counsel for appellee that this acknowledgment is defective, but he argues that in spite of the defective acknowledgment the deed is good as between the parties. He cites in support of this contention the case of *Saffold* v. *Horn,* 72 Miss. 470. The case is sound enough, of course, but the very quotation set out by counsel in his brief answers his contention. That quotation embodied the statement that the doctrine therein announced has no application where "the rights of third persons growing out of the registry laws are involved." Now this is our situation precisely. We have rights growing out of the registry laws. For it is not pretended, and there is no proof to show or which tends to show that these people, the Tinnins, had any actual notice of the execution of this deed from Lowenstein to Kinard. They had not searched the record as they state over and over in their testimony. Now if the acknowledgment was faulty as counsel seems to concede, then it was not entitled to be recorded, and if recorded it was not constructive notice to anybody. *Wasson* v. *Conner,* 54 Miss. 351; *Buntyn* v. *Compress Co.,* 63 Miss. 94.

Counsel has much to say in his brief to the effect that every person owning or buying land must be charged with notice of what is in his title deeds. This is true, but it does not follow that he must know about a deed outside the chain of his title of which he has neither actual nor constructive notice.

The reference in the testimony of the two Tinnins to having heard rumors of some trouble about the title all refer to rumors about the execution of the deed from Brown to his wife, and have no sort of reference to anything connected with this deed or alleged deed from Lowenstein & Brother to Kinard.

It is perfectly well settled that this acknowledgment was in fact no acknowledgment. It purports to be made by M. Lowenstein Brothers. This is not a person, but a partnership. One partner cannot acknowledge for a partnership unless he has authority to do so, and this authority must affirmatively appear. Authority to make and acknowledge a deed is not to be presumed. *Shirley* v. *Fearne,* 33 Miss. 653 (page 665 of opinion); *Watson* v. *Tusten,* 49 Miss. 569 (page 575 of opinion).

See also 1 Cyc., p. 88, where the requisites of a good acknowledgment on the part of one member of the firm are set out and explained, and where it is held that at least the certificate must show that the person making the acknowledgment was a member of the firm.

It has been squarely decided that a certificate reciting acknowledgment by the partnership without giving the name of the partner, or partners who made the acknowledgment is insufficient. *Sloan* v. *Owens Mach. Co.,* 70 Mo. 206; *Hughes* v. *Morris,* 110 Mo. 306.

The acknowledgment therefore being fatally defective was not entitled to record and did not impart constructive notice to anybody. In the absence of any proof that the purchasers had actual notice of its existence, we must conclude that this conveyance was of no effect to defeat the defendant's title.

Not only is the acknowledgment to this deed defective, thereby rendering it ineffectual as constructive notice, but the deed is not good even between the parties. The deed from the state vested this title in the partners. One partner cannot sell and convey this land in the partnership name. The deed must be signed by the individ-

ual members of the firm in order to bind all the members and really and effectually convey the firm property. Thus it is held that a conveyance in the partnership name will convey only the interest of the person making the deed. *Brunson* v. *Morgan,* 76 Ala. 593; *Goddard* v. *Renner,* 57 Ind. 532; *Willey* v. *Carter,* 4 La. Ann. 56; *Arnold* v. *Stevenson,* 2 Nev. 234; *Garber's Appeal,* 1 Walk. (Pa.) 438.

See also, *Shirley* v. *Fearne, supra; Dalton* v. *Trusten, supra; Berry* v. *Folkes,* 60 Miss. 576.

This principle is very clearly stated in *Dillon* v. *Brown,* 71 Am. Dec. 700, and cases cited in notes.

Now the court will remember that these appellants obtained from Mrs. T. Rosenbaum and Louis Lowenstein a deed to this property and that it was agreed that these grantors were the sole surviving heirs of the members of the firm of M. Lowenstein & Brother.

So that we readily see that the appellee here cannot depend upon the deed from Brown to his wife (and that is their sole dependence in this case) because at the time of the execution of this deed, the title was in M. Lowenstein & Brother. Nor are appellees helped by the fact that Brown long subsequent obtained a title from Kinard because the deed to Kinard from Lowenstein & Brother was ineffectual at least to pass more than the interest of the parties signing it. And further because on account of the defective acknowledgment it was not notice to anybody, and under our registry law could not defeat the title obtained from the heirs of the Lowenstein partners.

But it is said that appellants cannot make this point because it was agreed on the trial of the case that both parties claimed from a common source to-wit: F. M. Brown. This agreement is found on page 45 of the record and an inspection of this page of the record shows what was really agreed. The title is there deraigned from the government to Richardson; from Richardson

to Chester; from Chester to McDow; from McDow to Arthur Brown; from Arthur Brown to F. M. Brown. There the agreed chain of title ceases. The agreement must be referred to this chain of title and can mean no more than that it was agreed on the 29th day of December, 1865, the date of the conveyance from Arthur Brown to F. M. Brown, the title was in F. M. Brown. This agreement does not preclude appellants from setting up a superior title originating subsequent to the time when F. M. Brown acquired title. Counsel cites the case of *McReady* v. *Lansdale,* 58 Miss. 877, but this is no authority for his contention that it precludes appellants from setting up the tax deed. That case holds:

"There are certain exceptions to the rule stated. Among them is, that where both plaintiff and defendant claim from the same common source of title, he who has the better claim from that source may prevail in action; and an added doctrine is that, in such case, the defendant cannot defeat a recovery by the plaintiff having the better title, by showing a superior title outstanding in a third person, with which he has no connection; but the superior title, meant one older than the common source, or the title under which both claim as the foundation of their title. The reason why the defendant may not protect himself by appealing to an outstanding title in a third person, with which he has no connection, is that he has acknowledged the title of the common source and for that reason is precluded from questioning its validity at the time of his taking under it. But this reason does not apply to a title in a third person, which accrued after the date when defendant recognized the common source of title by taking title under it; and as to such subsequently accrued title, there is no hindrance to the defendant to avail himself of it. As to that there is no estoppel upon him."

Thus we see that this case is authority for us. We are not dealing with a title outstanding now in a third per-

son. We have acquired it. We are dealing with a title older than the common source; it originated long after F. M. Brown secured the deed from his father. The opinion is confidently relied on in support of our contention.

Counsel entirely mistakes the purport and effect of the agreement.

### THE CROSS APPEAL.

In the first place this effort to make a cross appeal must fail because the appellee has not filed in this court any assignment of errors on a separate sheet of paper as required by rule 7 of this court. The alleged assignment of errors upon which the cross appeal is predicated is really a part of appellee's brief.

In the second place, and considering the cross appeal as being properly before the court, it will be seen that there is no complaint as to the finding of the chancellor as to the value of the improvements. Appellee seems to be satisfied on this score.. His complaint is that the Tinnins ought not to be given credit for their improvements because they got by their deed from F. M. Brown and wife only a life estate. Therefore appellees invoke the rule that a life tenant or the purchaser from a life tenant cannot claim for improvements as against the remaindermen. Counsel relies upon the case of *Stewart* v. *Matheny*, 66 Miss. 21, but in that case the life estate which Matheny obtained by mesne conveyances was created by deed which plainly showed that the interest of Mary Stewart was only that of a life tenant. Here Matheny being charged with knowledge of what was in his title deeds must have known that he was buying no more than a life estate.

So is *Pass* v. *McLendon*, 62 Miss. 580, the vendee held under a recorded will which plainly gave his vendor only a life estate. But here these appellants claim not only under a warranty deed from F. M. Brown and wife, but

also under a deed from the heirs of Lowenstein & Brother who had the outstanding tax title, which we have discussed in the former part of this brief.

In order for this court to defeat their claim for improvements, it must hold that appellants are chargeable with knowledge of the law as to the limited title of the husband after his wife's death and must further hold that they had no right to rely on their conveyance from the Lowenstein heirs.

The claim for improvements must depend upon good faith. Now the Tinnins testify that they thought they were getting a good title; otherwise they would not have spent this money in the purchase of the land. They had heard nothing except some vague and indefinite reports about the title, and such reports were not sufficient to put them on inquiry. *Buck* v. *Paine,* 50 Miss. 648; *Tuteur* v. *Chase,* 66 Miss. 476.

Now the rule as to the right to compensation for improvements is regulated by statute in ejectment suits. See section 1848 of the Code of 1906. This statute was enacted to cure the harsh rule of the common law that even where there is good faith, there can be no allowance; while this was the holding of the common law courts courts of equity from the earliest times have adopted and enforced the rules of the civil law allowing for improvements when made in good faith. The statute does no more than to adopt this equity rule and to make it apply in courts of law as well as courts of equity. So that it is of great value here to consider such cases as *Cole et al.* v. *Johnson,* 53 Miss. 94, where it is held in construing this statute that the test is whether the vendee honestly believed himself the owner of the land and has color of title. In this case the court utterly repudiates the doctrine that he may not claim for improvements merely because a search through the records would have disclosed an infirmity in his title.

See also the numerous citations to this section in the Code of 1906.

That the rule in equity is the same as held practically in *Hughes* v. *Stallings,* 52 Miss. 375.

Further these appellees lived in the neighborhood of the Tinnins, knew all about the fact of the purchase from their father and stepmother. Yet they raised no objections and gave no notice of their purpose to claim the land. Under these circumstances they are estopped to contend against the improvements. *Willie et al.* v. *Brooks,* 45 Miss. 542.

In *Staton* v. *Bryant,* 55 Miss. 261, the court sanctioned the allowance for improvements where the purchaser had bought in good faith in ignorance of the true state of the title though having constructive notice thereof.

The true distinction between this case and the case of *Stewart* v. *Matheny* upon which appellee relies (even conceding that the tax deed is of no value) is that in the Matheny case the vendee claims under the very deed which creates the life estate. That is to say his title depends upon a deed which limits his interest. But in the case at bar, appellee claims not only under his tax deed, but under a deed from Brown who had the title at one time. Tinnin claims nothing by virtue of the deed from Brown to his wife. Quite the contrary. He knew nothing about it. That deed is outside the claim of his title, outside the chain of title upon which the Tinnins depend to sustain their claim of good faith. The Matheny case would have application only in case some question had arisen affecting one holding under Mrs. Brown.

*T. V. Brahan, W. M. Lewis, A. S. Bozeman,* for appellees.

Even at the expense of doing an useless thing, and I consider it an useless thing, to note the contention of counsel for appellants in their brief, "that at the time F. M. Brown made the deed to his wife, Charlotte M.

Brown, he had no title to said land, and therefore could convey none," for the express reason, that the written agreement between counsel and ourselves, on page 45 of this record, admits and agrees that F. M. Brown was the common source of title, then the question arises who has the best title from that common source?

But counsel say, "on August 10th, 1876, by deed recorded in Deed Book 8, page 396, records of the chancery clerk's office of Lauderdale county, Mississippi, the state of Mississippi conveys this land to M. Lowenstein Brothers and W. L. Lowenstein Brothers attempted to convey this land to T. C. Kinard, on March 29th, 1879, but this deed is signed by M. Lowenstein Brothers, and acknowledged the same way."

Our answer to this is, that the execution of this deed in the name of M. Lowenstein Brothers to T. C. Kinard was valid, even if the acknowledgment was faulty; but this court has held, that, "where the question at issue is as to the actual delivery of the deed, and no rights of third persons growing out of the registry laws are involved, the validity or invalidity of the acknowledgment is immaterial. See 72 Miss., page 471, the syllabus at top of said page.

T. C. Kinard next conveys this land to F. M. Brown on May 20th, 1885, and if F. M. Brown's title was strengthened any by these conveyances, subsequent to his conveyance to his wife, Charlotte M. Brown, on January 12th, 1878, then such title immediately inured to the benefit of Charlotte M. Brown and her heirs. This court has held, that, "where one, who had taken the initiatory steps to homestead government land, sold the timber thereon before making final proof and perfecting the entry, his conveyance thereof, upon his making final proof and obtaining a patent, will be good by estoppel as against him and his subsequent grantees with notice. See 83 Miss., page 606 and page 478, also 82 Miss., page 494.

But again, I ask, why multiply words about these subsequent conveyances, when it is admitted and agreed that F. M. Brown was the common source of title, and the record shows he first acquired title to the lands from his father Arthur Brown and wife on December 29th, 1865, recorded in Deed Book "K" page 542. "He who has the better claim from the common source will prevail." 58 Miss., page 877.

"One seeking cancellation of a title as a cloud upon his own must show that he is the owner of the land; but where both parties claim from a common source, this is an admission that the title was in such source, and if the complainant shows that he has the title derived therefrom, he is entitled to a decree, without further proof of title." *Peoples Bank* v. *J. S. West, Jr.,* 67 Miss., page 729.

Again, learned counsel for appellant, in their brief say, "If this court should so hold, (i. e. that title was in F. M. Brown from Kinard) then under the statute in force at that time, to-wit: Code 1880, F. M. Brown was an heir of Charlotte M. Brown, and was a tenant in common with their children, and therefore, appellants at least had an undivided interest in said land." My friends are very much mistaken about the law which governs this case. F. M. Brown, the husband of Charlotte Brown, who were the father and mother of these complainants, died on the 25th day of May, 1904, and Mrs. Charlotte M. Brown, to whom F. M. Brown conveyed these lands, on to-wit: January 12th, A. D., 1887, and under whom complainants claim, as heirs at law, died in March, 1880, before the Code of 1880 went into effect, and the rights of her husband, the said F. M. Brown, and these complainants, to her property, are governed by the Code of 1871. The Code of 1880 did not go into effect until the 1st day of November, A. D. 1880, about eight months after Mrs. Brown's death. (See page 46, §§ 2 and 3 of Code 1880). Under section 1786

of the Code of 1871, the husband, F. M. Brown, had an estate in "courtesy" in these lands, or a life estate, which Mrs. Charlotte M. Brown died seized and possessed of, and at his death, then the lands descended to these complainants, Mrs. Charlotte M. Brown's children, in fee simple as tenants in common.

As above stated, F. M. Brown died on May 25th, 1904, and this original bill was filed March 25th, A. D., 1908, so the Statute of Limitations or adverse possession invoked by the defendants have no place in this case; see *Jordon* v. *Robbitt,* 91 Miss., page 1, but especially page 78 of the case. "The interest which a man has in the estate of his wife, as tenant by the courtesy initiate, is a well defined legal estate, it being a foreclosed estate which will exist after the death of the wife, for the life time of the husband, if he be the survivor." *Day & Prentiss* v. *Robert Cochran,* 24 Miss., page 261.

Again, "A purchaser in fee simple from the husband, of land belonging to the wife, is, after the termination of the husband's life estate by the courtesy, a tenant at sufference of the wife, if she be living, and of her heirs if she be dead, and he cannot therefore, without surrendering the possession thus acquired, purchase in an outstanding paramount title so as to defeat the right of the wife, or her heirs." See *Griffin* v. *Sheffield,* 38 Miss., page 359. See also *Harvey* v. *Briggs,* 68 Miss., page 60.

In *Barrier* v. *Young,* 50 So. Rep., page 559, this court said, "where the owner of land died leaving a widow and three children, and the land descended to his children, subject only to the dower interest of the wife, a deed by her conveyed a life estate only, and on her death the property descended to the surviving child.

"A purchaser is presumed to know what appears on the face of title papers." Wait's Actions and Defenses, page 449; *Martin* v. *Nash,* 31 Miss., page 324; *Claiborne* v. *Holmes,* 51 Miss., page 146. The purchaser of land is bound to take notice of all the recitals in the deed

through which his title is derived, and is bound not only by everything stated in the several conveyances constituting his chain of title, but must investigate and expose fully everything to which his attention is thereby directed." *Deason* v. *Taylor*, 53 Miss., page 697.

Not only did these defendants have constructive notice of the fact that the title to these lands were in complainants, under their mother's deed from their father, at their father's death, which deed was recorded on January 12th, A. D., 1878, but they had actual notice also, which they admit in their testimony, and not only this, they undertook negotiations with each of these complainants before buying the lands, in an endeavor to buy from them.

A. L. and J. B. Tinnin both testified that they heard, before their purchase of the lands, the title discussed, and notwithstanding this notice, and knowledge which was at least enough to have put them upon the inquiry, as to the title, they both testified that they never searched the records of the county, or employed an attorney to to do so, before buying. In their testimony, S. A. Brown testified that at the time the Tinnins bought these lands, they were reasonably worth fifteen hundred dollars and yet on account of the unsafeness of the title, they bought the lands for about one-third of their value, viz., five hundred dollars. A purchaser is charged with constructive notice of whatever appears on the face of the conveyance constituting his claim of title, or by the record of the instruments: Am. and Eng. Ency of Law, 2nd Ed., vol. 23, page 508, note 3; *Wales* v. *Cooper*, 24 Miss., page 208; *Gordon* v. *Dizer*, 39 Miss. page 805.

F. M. Brown had a perfect right to give this land to his wife, Charlotte M. Brown, by his deed, which recites a good and not a valuable consideration, except the sum of one dollar, at the time he executed the deed, because there is no charge that at that time he owed any debts, and the deed is not challenged for fraud of any kind.

. Now, by way of cross appeal, the appellees assign for error, the following upon the record of this case, brought into this court by appellants: ⁻

The chancellor erred in allowing the defendants the amount or value of the improvements placed upon the lands, for the reason that in the instant case under the law and facts, they were not entitled to the value of same. "A purchaser of land is conclusively presumed to know what appears on the face of the title papers under which he claims." "Whereby by deed duly recorded, a life estate is created, one having title to land derived under mesne conveyances from the life tenant, who erects permanent improvements on the land, takes the risk of the duration of the life estate, and cannot, after the termination thereof, charge the land as against the remainderman with the value of the improvements." The mere fact that the remainderman stood by and permitted improvements to be made on the land by the life tenant and did not give notice of his claim will not estop the remainderman from claiming the improvements after the life estate is terminated. Knowledge that the improvements are being made imposes no obligation on him to object. The tenant for life cannot acquire a tax title to the defeat of the remainderman. *Stewart* v. *Matheny,* 66 Miss., page 21.

As I have discussed *supra,* these defendants bought this land with their eyes open, and with full constructive as well as actual notice, and put these improvements on the remainderman's property, and I submit, that they should "pay for their folly," and should lose the value of these improvements. Suppose, these children, complainants, did not want these improvements placed on the land, as a charge against it, or that they were not of the character of improvements they desired, or that they did not then or now feel able to pay for them; but defendants undertook to buy up a defective title, and went into possession of the land, and placed improve-

ments on other people's land with full notice, I repeat, of their superior title, ought they to recover the value of such improvements under such circumstances?

In conclusion, I ask that the decree be affirmed on direct appeal, and reversed on cross appeal.

WHITFIELD, C.

So far as the agreement in the record that F. M. Brown was the common source of title is concerned, that means no more than that he was once such common source of title; but this does not preclude the defendants from showing, if they can, that they now hold the title through the tax deed made to M. Lowenstein & Brother. Undoubtedly, F. M. Brown was the common source of title; but the defendants may, notwithstanding that, and the agreement to that effect, show that, though he was such at one time, his title has come to them through a paramount valid tax title, if it was valid. We say if it was valid, because we do not now decide anything as to the validity of the tax title. The validity of the sale for taxes was not questioned below, save for the reason that, as alleged, the twelve months allowed for redemption under the act of April 15, 1876, had not expired. But this objection was properly disallowed. It is also said that the said sale was made on the wrong day of the month; but it is not pointed out why it was made on the wrong day. The matter was very obscurely presented to the court below, and the learned counsel for the appellees does not, in his brief here, assail the tax title at all. We prefer, on this uncertain and obscure presentation as to the validity of the tax deed, to decide nothing as to whether it was valid or not, since it is not now necessary to decision. Whether it was invalid may be shown on another trial.

It is clear, from the testimony in this record, that the appellants had actual knowledge of the deed from F. M. Brown to his wife, made on the 12th day of January,

1878, and, further, that they had actual knowledge of the deed by the auditor, made on the 10th of August, 1876, to Lowenstein & Brother. They must necessarily have had actual knowledge of this fact, since they themselves bought from the heirs of the members of the firm of M. Lowenstein & Brother. But it is equally clear, from this very obscure record, that the appellants are not shown to have had any actual knowledge of the deed from M. Lowenstein & Brother to T. C. Kinard, of date March 29, 1879, or of the deed from Kinard to F. M. Brown, father of appellees, of date March 20, 1885. The deed from M. Lowenstein & Brother to Kinard is made in the firm name, and is acknowledged in the firm name "M. Lowenstein & Brother," and is as follows:

"M. Lowenstein & Brother to T. C. Kinard. Quitclaim Deed. Filed for record Jany. 14th, 1885, at three o'clock p. m. Recorded Jany. 14th, 1885. McRae Mosby, Clerk, by B. V. White, D. C.

"In consideration of two hundred and twenty-nine dollars, we convey to T. C. Kinard the land described as W. ½ of N. E. ¼ and E. ½ of N. W. ¼, Sec. 11, T. 7, R. 16 E., containing one hundred and sixty acres more or less. Witness our signature the 29th day of March, 1879. M. Lowenstein & Brother.

"State of Mississippi, Lauderdale County. Personally appeared before me, Wm. S. Patton, justice of the peace of said county, the above named M. Lowenstein & Brother, who acknowledge that they signed and delivered the foregoing deed on the day and year therein mentioned as their act and deed. Given under my hand this 14th day of Jany., A. D. 1885. Wm. S. Patton, J. P."

It is said in the case of *Schumpert* v. *Dillard,* 55 Miss. 348, that a deed to a partnership conveyed a good title to and vested it in the members of the partnership. The appellants here afterwards, on the 28th of August, 1905, for the nominal consideration of one dollar, obtained a conveyance of this land by quitclaim from the heirs of

the members of the firm of M. Lowenstein & Brother. They therefore have rights growing out of the registry laws of the state, and the evidence in this record fails to show that they had any actual notice of the deed from M. Lowenstein & Brother to Kinard and from Kinard to Brown, as set out above. The acknowledgment of the deed from M. Lowenstein & Brother to Kinard is admitted by the counsel for the appellees to be fatally defective, and therefore that deed was not entitled to record, and imparted no constructive notice to appellants, who are third parties. *Wasson* v. *Conner,* 54 Miss. 351; *Buntyn* v. *Compress Company,* 63 Miss. 94.

It seems to be settled that one partner cannot acknowledge for a partnership, unless he has authority to do so, and this authority must affirmatively appear; authority to make and acknowledge a deed not being presumed. *Shirley* v. *Fearne,* 33 Miss. 665, 69 Am. Dec. 375; *Walton* v. *Tusten,* 49 Miss. 575. See, also, *Sloan* v. *Mach. Company,* 70 Mo. 206. Having not shown any constructive notice, therefore, of the deed from M. Lowenstein & Brother to Kinard, nor any actual knowledge of it, that deed can be of no effect, on the testimony in this record, to defeat the appellants' title, so far as mere notice is concerned. This suit was begun March 25, 1908, and the deed from the heirs of the members of the firm of M. Lowenstein & Brother to appellants was not made until August, 1905, and then only for a nominal consideration of one dollar. These appellants only paid five hundred dollars for the land to J. B. Hoover, from whom they claim to have bought, who had no title, when the land, according to the testimony, was worth about fifteen hundred dollars. These are suspicious circumstances, strongly going to show the want of good faith on the part of the appellants, and also tending inferentially to show that they must have had some actual knowledge of the invalidity of the title.

Irrespective, however, of the mere question alone of notice, constructive under the registry laws, or actual, the principle of law is thoroughly settled that no one can claim the protection afforded an innocent purchaser for value who has not paid value, within the meaning of the law on that subject. The precise point before us has been squarely decided in this state in *Doss* v. *Armstrong,* 6 How. 259, 260. The court there said: "It is true that Armstrong denies any notice of this conveyance, and claims to be a purchaser for a valuable consideration. He has not, however, brought himself within the influence of the rule under which he claims relief. He was a mere volunteer, having paid only a nominal consideration for the release of William Vick's title, if he had any. This is shown by the deed itself, and it is well settled that a mere volunteer can never claim relief on the ground that he is a bona fide purchaser for a valuable consideration." It would, of course, be understood that we do not rest this point on the fact that the deed was a quitclaim, but on the fact, the very pregnant fact, that the appellants paid only one dollar for a tract of land shown in the testimony to be worth fifteen hundred dollars. Manifestly the dollar was a purely nominal consideration. Whether, therefore, the appellants had actual or constructive notice of the deed from Lowenstein & Brother to Kinard, they cannot claim the protection afforded to an innocent purchaser for value. See *Spicer* v. *Waters,* 65 Barb. (N. Y.) 231, where the court say: "The consideration must be full and fair."

This brings us to the decisive question on the direct appeal, which is: Was the deed from Lowenstein & Brother to Kinard valid between the parties? The authorities establish the principle that a deed in the firm name to real estate will convey only the interests of the partners who actually execute it. In this wretchedly unsatisfactory record, it is not made to appear how many partners there were in the firm, nor how many of them

signed this deed in the firm name, and acknowledged it in the firm name. We know, however, that the legal entity, the partnership, could not personally appear and sign or acknowledge a deed. Some one or more of the members of the firm must have appeared personally, and signed this deed, and acknowledged it. The deed was undoubtedly given to convey his or their interests to Kinard, and it would seem that Kinard would have had an equity to compel the member or members who did not sign to make a conveyance of their interests. It is said in Bates on Partnership, vol. 1, § 296: ''But in many states the strict rule has been relaxed, and a deed or mortgage to A. & B., or A. & Co., has been held valid, or at least not void for uncertainty, on proof of identity, doubtless on the principle of '*id certum quod reddi certum potest;*' and probably in all states such a deed or mortgage to or by partners in the firm name would be enforced in equity, where the defect could be cured, where the litigation is between partners, or between a firm and its grantee, and there is no dispute as to priorities of other liens.''

At all events, we think this much is certain: That Kinard did get the interests of that member or members of the firm of Lowenstein & Brother who personally signed and personally acknowledged the conveyance. This being true, no decree here can be rendered on the reversal which must follow on the direct appeal; but the cause must be remanded, for full proof on all the points indicated. Since, however, it is not shown by the present record that the whole interest, or what interest, as to the legal title, passed to Kinard by the deed from Lowenstein & Brother, the court below erred in awarding the whole title, on the evidence in this case, to the appellees. The appellees may have the whole title, but they must show it by proper evidence on another trial.

Coming now to the cross appeal: Complaint is made by cross complainants that the improvements should not

have been allowed to the appellants, on the theory that the appellants claim alone under Brown, father of appellees, with full actual notice that the appellees were the remaindermen, and the father only a tenant by the curtesy; relying upon the cases of *Pass* v. *McLendon,* 62 Miss. 580, and *Stewart* v. *Matheny,* 66 Miss. 21, 5 South. 387, 14 Am. St. Rep. 538. But the trouble with this contention is that these appellants do not claim under Brown alone, or chiefly, but under their quitclaim from Lowenstein & Brother, without any notice, actual or constructive, of the deed from Lowenstein & Brother to Kinard. On this state of the case, the principles laid down in *Cole* v. *Johnson,* 53 Miss. 94, necessarily result in entitling the appellants to their improvements.

Wherefore the decree of the chancellor in awarding the improvements is correct.

*Reversed and remanded on direct appeal.*
*Affirmed on cross appeal.*

Per Curiam. The above opinion is adopted as the opinion of the court, and for the reasons indicated therein the decree on the direct appeal is reversed, and the cause remanded, and the decree on the cross appeal is affirmed.