## ADAMS OIL & GAS CO. v. HUDSON *et al.*

No. 4731.   Opinion Filed July 6, 1915.

Rehearing Denied February 15, 1916.

(155 Pac. 220.)

1.  DEEDS—Execution—Validity—Mental Capacity.  The deed of a person whose mind is unsound, but who is not entirely without understanding, made before her incapacity is judicially determined, is not void, but voidable, and passes title.

2.  VENDOR AND PURCHASER—"Bona Fide Purchaser"—What Constitutes—Burden of Proof.  To constitute a "bona fide purchaser" three things must exist:  (a) A purchase in good faith;  (b) for value; and  (c) without notice.  And, where a subsequent purchaser interposes the defense of a bona fide purchaser, the burden is upon him to show a purchase for value, and, on his failure to do so, he cannot claim the benefits of a bona fide purchaser.

3.  DEEDS—Recital of Consideration—Effect as Evidence.  The recital in a deed that the consideration has been paid is prima facie evidence as between the parties thereto, but as to strangers and persons claiming in opposition to the deed it is no evidence.

(Syllabus by Dudley, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Frank Hudson and others against Richard C. Adams and others.  Judgment for all plaintiffs except William Hudson, and defendant Adams Oil & Gas Company brings error.  Affirmed.

*M. E. Michaelson, Brennan, Kane & McCoy,* and *Hutchings & German,* for plaintiff in error.

*N. A. Gibson, T. L. Gibson, K. S. Murchison,* and *Me-Rea & McRea,* for defendants in error.

Opinion by DUDLEY, C.  This is an appeal from the superior court of Muskogee county.  On and prior to No-

vember 30, 1904, Peggie Hudson, a freedman citizen of
the Cherokee Tribe of Indians, was the owner and in pos-
session of 50 acres of land, the same being her surplus
allotment. It appears that on said day said allottee exe-
cuted and delivered to Richard C. Adams a warranty deed
covering said premises, which said deed was shortly there-
after recorded; that thereafter, and on February 15, 1906,
said Richard C. Adams and his wife executed and delivered
to the Adams Oil & Gas Company, a corporation, the plain-
tiff in error, hereinafter referred to as the defendant com-
pany, a quitclaim deed covering said premises and other
premises, which said deed was duly recorded. This deed
recites a consideration of $10,000. Following this, and
on November 8, 1906, the said Richard C. Adams and his
wife executed and de'ivered to the defendant company an-
other quitclaim deed covering said premises. This deed
was also recorded and recites a consideration of $10,000.
There was no new or additional consideration paid for this
second deed; it was merely given as confirmatory of the
first. At the time these two deeds were executed and de-
livered Richard C. Adams was the vice president and gen-
eral manager of the defendant company. From the date
of the deed from the allottee to him down to and including
the date of the first deed from him to the defendant com-
pany he was, in a sense, in possession of the land in con-
troversy. The record, however, does not disclose fully the
extent or nature of his possession. The defendant com-
pany has been in the exclusive possession of said premises
since the date of its first deed. On July 5, 1911, the defend-
ant company entered into a written contract with P. J.
White and R. E. Markham, by the terms of which it agreed
to convey said premises to them, which contract was duly
recorded.

In December, 1908, said allottee was adjudged insane and duly committed to the Asylum for the Insane at Norman, where she thereafter, and in March, 1909, died intestate, leaving surviving her as her heirs William Hudson, surviving husband, and Frank Hudson, Annie Hudson, Maggie Hudson, and Mattie J. Dixon (nee Hudson), her children, and Peggie Nave and others, her grandchildren. After her death William Hudson was appointed administrator of her estate.

In January, 1912, William Hudson, as the surviving husband of said deceased allottee, and as administrator of her estate, and the children and grandchildren of said deceased, commenced this action against the defendant company, Richard C. Adams, P. J. White, and R. E. Markham, to recover possession of said premises, damages for the unlawful detention thereof, to cancel the deed from said deceased allottee to Adams, the two deeds from Adams to the defendant company, and its contract with White and Markham. Plaintiffs' petition contains two counts. In the first they allege that they are the legal and equitable owners of said real estate and entitled to the immediate possession thereof; that the defendants wrongfully detained the possession thereof, to their damage in the sum of $2,000. In the second, after alleging their ownership of said premises, their right to the immediate possession thereof, and the execution of the deeds and contract hereinbefore referred to, they allege that at the time of the execution of said deed from said deceased allottee to Adams, and for a long time prior thereto, she was mentally unsound and notoriously insane; that at the time of the execution of said deed she was of unsound mind and mentally incapable of contracting or understanding the nature and effect of said deed; that her mental condition was well

known to said Adams at the time of the execution of said deed, and for a long time prior thereto, and that he fraudulently procured said deed, with knowledge of her condition, for a grossly inadequate consideration; that at the time Adams executed said deeds to the defendant company said allottee was mentally unsound, notoriously insane, and incapable of contracting, all of which was well known to the defendant company; that the same condition existed as to her mental capacity at the time the defendant company contracted to convey said premises to White and Markham, all of which was well known to them. Service was had by publication upon Adams, White, and Markham, and a default judgment entered against them.

The defendant company answered, admitting the execution of the deeds and contract referred to in plaintiffs' petition, but denying the allegations therein as to the mental condition of said deceased allottee at the time of the execution of said deeds and contract, claiming, however, that even though her mental condition did exist, as alleged, it had no knowledge thereof at tne time it purchased said premises from Adams; that it paid him the sum of $10,000 for said premises, bought the same in good faith, without notice; and that by reason thereof it was the legal owner of said premises, and its title thereto should not be disturbed.

The issues were joined, and the case tried to the court without a jury, resulting in a judgment in favor of the children and grandchildren of said deceased cancelling said deeds and contract. The court held, however, that William Hudson, the surviving husband of said deceased, was estopped from claiming any interest in said premises, and therefore rendered judgment in favor of the defendant

company against him. The defendant company has appealed from the judgment as to the children and grandchildren of said deceased, and William Hudson, surviving husband of said deceased, has appealed from the judgment against him in favor of the defendant company.

The record fairly presents three questions for determination: (1) Was the deed from the deceased allottee to Adams void or voidable, and did he know the condition of her mind at the time he obtained it? (2) Is the defendant company a *bona fide* purchaser? (3) Is William Hudson, surviving husband of the deceased, estopped from asserting or claiming any interest in the property in controversy?

In determining whether the deed from the deceased allottee to Adams was void or voidable, it will be necessary to consider sections 5033, 5040, and 5041, and subdivision 2 of section 1137, Comp. Laws 1909, which are as follows:

"Persons of unsound mind within the meaning of this [Code] are idiots, lunatics and imbeciles."

"A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary to his support or the support of his family."

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission as provided in sections 1134 and 1136 inclusive."

"2. He must restore to the other party every thing of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

If the deceased allottee was of unsound mind and entirely without understanding at the time she executed the deed, then it was void and passed no title; otherwise voidable, and passed title to the grantee, Adams. *Mass et al. v. Dunmeyer,* 21 Okla. 434, 96 Pac. 591. In that case it was said:

"The deed of a person whose mind is unsound, but who is not entirely without understanding, made before his incapacity is judicially determined, is not void, but voidable, and passes title. * * *"

This being the law, it only remains for us to apply the facts.

She signed her name to the deed before a notary, and in the presence of her husband and daughter, but did not know fully the nature and effect of the transaction. Shortly before or after the execution of this deed she executed an oil and gas lease covering other lands of hers. Her husband was present when this was done, and in reply to questions she directed her husband to do as he thought best, stating that whatever he did was all right. Her mind began to fail about two years before she made this deed. Her family physician treated her for some time prior thereto, and was treating her about the time of its execution. He testified as to her mental condition during this time, and stated that, in his opinion, she was incapable of transacting ordinary business at the time she executed the deed. She stayed at home alone a portion of the time immediately prior to and after the execution of this deed. She had frequent spells, during which time she was wild and unruly. We think she was of unsound mind at the time she executed this deed, but we cannot, with a clear conscience, say that she was entirely without understanding when she executed it. She remained at home for nearly

four years after the execution of the deed, and was then committed to the asylum. We therefore conclude that this deed was voidable and passed the legal title to Adams.

The evidence shows that Adams knew and had actual knowledge of her mental condition at the time and before he procured the deed. He paid $500 in cash and turned over improvements of the reasonable value of $200 for this deed. The cash payment was made to her husband. However, a portion of it was used for her benefit. It is not quite clear what became of the improvements, but it is fair to assume that they were placed upon her homestead allotment. There was a default judgment against Adams; the trial court finding that he was not a *bona fide* purchaser. The evidence amply supports this finding. He, however, is not here complaining. The defendant company insists that the default judgment as against Adams is void. This matter we do not determine.

Was the defendant company a *bona fide* purchaser? It contends that it was, and especially pleads that it purchased in good faith, for value, without notice. Plaintiffs contend that it was not, for two reasons: (a) That it failed to prove a purchase for value; and (b) that it purchased by quitclaim deed. The answer of the defendant company, setting up that it was a *bona fide* purchaser, is in the nature of an affirmative defense. *Brooks et al. v. Garner*, 20 Okla. 236, 94 Pac. 694, opinion on rehearing 97 Pac. 995; *Weber v. Rothchild*, 15 Or. 385, 15 Pac. 650, 3 Am. St. Rep. 162. It contends that its deed recites a consideration of $10,000, and that this recitation is sufficient, or at least is *prima facie* evidence of a purchase for value. With this contention we cannot agree. When it developed that one of the grantors in its chain of title was

of unsound mind, the burden was on it to prove and satisfy a court of equity that it was a *bona fide* purchaser. *Brooks et al. v. Garner, supra; Richards v. Vaccaro,* 67 Miss. 516, 7 South. 506, 19 Am. St. Rep. 322; *Weber v. Rothchild, supra; Letson v. Reed et al.,* 45 Mich. 27, 7 N. W. 231. Mr. Justice Dunn, speaking for this court on rehearing in the case of *Brooks et al. v. Garner, supra,* quotes approvingly the following from the Supreme Court of Michigan in the case of *Letson v. Reed et al., supra:*

"Purchasers of land which has been fraudulently transferred to their grantor must establish the good faith of their purchase, and it cannot be presumed."

And then he adds:

"In order for the plaintiff in error to have prevailed in this cause it was necessary that Mrs. Scarborough's title be shown to have been clear and free from fraud, purchased by her, in good faith, without notice, and for a valuable consideration."

This being true, what constitutes a *bona fide* purchase? Three things must exist: (a) A purchase in good faith; (b) for value; and (c) without notice. Where a subsequent purchaser establishes a purchase for value, good faith and lack of notice are presumed, and the burden shifts to the party attacking the transfer to show bad faith and notice, actual or constructive. The recital in a deed that the consideration has been paid is *prima facie* evidence as between the parties and those claiming under them, but as to strangers and persons claiming in opposition the recital is no evidence as to the consideration paid. To them it is mere hearsay, and is no evidence of a purchase for value. *Kruse v. Conklin,* 82 Kan. 358, 108 Pac. 856, 36 L. R. A. (N. S.) 1124; Devlin on Deeds (3d Ed.) vol. 2, secs. 820, 821, and cases cited; *Boone et al. v.*

*Chiles et al.,* 10 Pet. 177, 9 L. Ed. 388. There is no proof
in the record, as against the plaintiffs, even tending to
show that the defendant company purchased for value. In
the absence of such proof, good faith cannot be presumed.
Indeed, the defendant company might be termed a bad-
faith purchaser. At least it cannot be said to be a *bona
fide* purchaser, and it is therefore not entitled to the benefits
thereof. The defendant company and its grantor, Adams,
knew what consideration, if any, actually passed for this
property. Adams and the officers of the defendant com-
pany, and some of its directors, testified as witnesses for
the defendant company, but it did not see proper to advise
the court what consideration, if any, was actually paid.
If, as a matter of fact, any consideration was paid, the
nature, amount of it, and the facts with reference thereto
were within the breasts of Adams and the officers and di-
rectors of the defendant company. It was the company's
duty to advise the court fully with reference to these mat-
ters. This it failed to do, and, in the absence of a show-
ing that it is a purchaser for value, it has no right to in-
voke the aid of a court of equity. Its hands are not clean.
A *bona fide* purchaser is favored by the courts, but until
one brings himself within the rule of a *bona fide* purchaser
a court of equity will not extend its aid. We therefore
conclude that the defendant company was not a *bona fide*
purchaser. It not having purchased for value, there is
nothing to restore. The following authorities support our
position: *Brooks et al. v. Garner, supra; Weber v. Roth-
child, supra; Richards v. Vaccaro, supra; Letson v. Reed
et al., supra; Conklin v. Kruse, supra;* Devlin on Deeds,
*supra; Boone et al. v. Chiles et al., supra; Perkins v. Greg-
ory et al.,* 87 Kan. 303, 124 Pac. 168; *Coon v. Browning,*
10 Kan. 85; *King v. Mead,* 60 Kan. 539, 57 Pac. 113; *Mor-*

*ris v. Daniels,* 35 Ohio St. 406; *Roseman v. Miller,* 84 Ill. 297; *Lake v. Hancock,* 38 Fla. 53, 20 South. 811, 56 Am. St. Rep. 159; *Nickerson v. Well-Stone Merc. Co.,* 71 Minn. 230, 73 N. W. 959, 74 N. W. 891; 23 Amer. & Eng. Ency. of Law, secs. 522, 523; 24 Amer. & Eng. Ency. of Law, sec. 140; *Shotwell v. Harrison,* 22 Mich. 410; *Sillyman v. King,* 36 Iowa, 207; *Robertson v. McClay,* 19 Tex. Civ. App. 513, 48 S. W. 35; *Black Eagle Oil Co. v. Belcher et al.,* 22 Cal. App. 258, 133 Pac. 1153; *Carr v. Mouzon,* 93 S. C. 161, 76 S. E. 201, Ann. Cas. 1914C, 731; *Lakin v. Sierra-Butte Gold Mining Co.,* 25 Fed. 337; *Tinnin v. Brown,* 98 Miss. 378, 53 South. 780, Ann. Cas. 1913A, 1081; 13 Ency. of Evidence, pp. 896-902; Pomeroy's Equity Jurisprudence (3d Ed.) vol. 2, sec. 745; Fletcher's Equity Pleading & Practice, sec. 299; 48 Century Digest, tit. "Vendor and Purchaser," secs. 601-605, 611.

In the case of *Conklin v. Kruse, supra,* Mr. Justice Porter, speaking for the court, said:

"The court's error was holding that, in the absence of any evidence to the contrary, Ritchie must be presumed to have purchased for value and without notice. While there is some conflict in the authorities, the rule appears to be settled by the better reasoning, as well as the weight of authority, that the burden of proof as to the payment of a valuable consideration rests upon the subsequent purchaser"—citing cases.

And again:

"The reason of the rule that the burden of proof as to the payment of a valuable consideration rests upon a subsequent purchaser is that, while the recital in a deed that the consideration has been paid is *prima facie* evidence, as between the parties, it is no evidence against a stranger. [Citing cases.] Other reasons given for the rule are that the knowledge and means of proving the consideration are

more reasonably and naturally in the possession of the grantee and the difficulty which ordinarily arises where an attempt is made to prove the negative rather than the affirmative of a proposition.

"As to notice, it will be observed that the rule is equally well established that the burden is on the one who claims under the prior unrecorded deed. At least this is true as soon as it is established that the subsequent purchaser parted with value. Many of the courts take the view that the burden of proof as to the good faith of the subsequent purchaser shifts as soon as the last purchaser has shown that he paid a valuable consideration. [Citing cases.] As soon as it appears that a valuable considera- tion has been paid, the presumption arises that the purchaser acted in good faith and without notice of the rights of the parties who claimed under the unrecorded deed."

There is no proof in the record that the defendant company had actual knowledge of the mental condition of Adams' grantor at the time it procured its deed from him, but, since the company failed to bring itself within the protection of a *bona fide* purchaser, it is not necessary for the plaintiffs to show actual notice. We therefore conclude that the judgment of the trial court, as between the children and grandchildren of the deceased and the defendant company, is correct and should be affirmed. In view of the conclusion we have reached, it is not necessary to determine the very interesting question as to whether the grantee in a quitclaim deed is a *bona fide* purchaser.

The only remaining question to be determined is whether or not William Hudson, the surviving husband of the deceased allottee, is estopped from asserting or claiming any interest in the property in controversy, as against the defendant oil company. The trial court held that he was. We think the pleadings are sufficient to raise the

question, and that the evidence amply supports the finding of the trial court. When a court of equity assumes jurisdiction, it has the power, and it is its duty, to do justice between the parties. We think the court did so in this case.

The judgment is therefore affirmed as against William Hudson.

By the Court: It is so ordered.