JAMES L. KING *et al.* v. LOUISA E. MEAD.

No. 11207.

1. EVIDENCE—*Recital in Deed.* The recital in a deed of the amount of the consideration or purchase-price of the land is not evidence against one who does not claim under the deed, but in opposition to it.

2. ———— *Not Estopped by Recital in Deed.* A party who does not sue upon a deed or other instrument executed by him, and containing admissions made by him, is not estopped in an action against another party to it, in which its admissions are only collaterally drawn in question, to give in evidence the actual fact, though contrary to the admissions.

3. ———— *Estoppel in Pais.* Evidence examined, and held insufficient to prove an equitable estoppel, or estoppel *in pais.*

Error from Johnson district court; JOHN T. BURRIS, judge. Opinion filed May 6, 1899. Affirmed.

*A. Smith Devenney*, for plaintiffs in error.

*Parker & Hamilton*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action brought by the defendant in error, Louisa E. Mead, as plaintiff, against James L. King and others, the plaintiffs in error, as defendants, to quiet title to a tract of eighty acres of land. The court made findings of fact, and upon them rendered judgment in favor of the plaintiff. The defendants prosecute error to this court.

A summary of the facts as found by the court is as follows : The plaintiff, Louisa E. Mead, was the wife of George F. Mead, who died intestate in June, 1896. The heirs of George F. Mead were his widow, the plaintiff below, and one daughter, Stella Gertrude, who was the wife of the defendant below, James L. King. Stella Gertrude has since died.

Her heirs were her husband and a minor son, Glen M. King, also a defendant below. At the time of the death of George F. Mead the title to the tract of land stood in his name, and he was also the owner of an undivided half interest in a certain other tract of 160 acres of land. In June, 1880, Mrs. Louisa E. Mead received from the estate of her father in Indiana the sum of $1972, which she placed in the hands of her husband for investment. He placed $1900 of this sum in the hands of a loan agent, to be loaned in his wife's name. It was left in the hands of the agent until January, 1884, and upon it during this time the husband drew interest to the amount of $900. The plaintiff and her husband agreed to invest the money in the tract of land now in dispute, and, accordingly, on the 22d day of January, 1884, the husband bought the land and paid for it with his wife's money, withdrawing all of the money from the hands of the agent for that purpose. The husband took the title to the land in his own name without his wife's consent. Eliza Mead, the mother of George F. Mead, owned the other undivided half of the quarter-section before mentioned, and after the death of her son, the plaintiff's husband, the plaintiff and her daughter Stella Gertrude, on the one side, and Eliza Mead on the other, made an amicable and equal division in acres of the quarter-section. The eighty-acre tract taken by the plaintiff and her daughter was more valuable than the eighty taken by Eliza Mead. The difference in value was $746. In order to pay this difference and to pay some outstanding debts of the deceased, George F. Mead,— there being no administrator of his estate — the plaintiff and her daughter and the daughter's husband, James L. King, gave

their notes for $1000 and a mortgage to secure that amount on the tract of land in dispute. The mortgage contained a covenant that the parties signing it were the owners of the mortgaged land.

In addition to the findings made by the court, the evidence quite satisfactorily establishes the fact that the deceased, George F. Mead, recognized his wife's ownership of the equitable title to the land. At various times during the twelve years preceding his death, in which the legal title stood in his name, he admitted to different persons that the land belonged to his wife. The evidence as to the reason why James L. King and his wife Stella Gertrude signed the notes and mortgage is very meager and unsatisfactory. The following is all relating to the subject. King testified:

"She (Louisa E. Mead) told us, after she found out where she could get the money and who she could get it from, that we would have to go to town with her that afternoon and sign the papers for that mortgage on that farm, that Morse eighty, as we had as much interest in it as she had, and she couldn't get the money unless we did.

"Q. Unless you did what? A. Signed the papers.

"Q. You may state to the court if you relied and acted on that request. A. We did."

Another witness testified as follows:

"One day — it was in the fall of the year — she (Louisa E. Mead) came in there when we were eating dinner and wanted them to get ready to go to town, she said, to sign the mortgage and get some money. She said she wanted to pay grandma some money, and said it was as much to their interest to go and get the money; they had as much interest in the land as she had."

The plaintiff testified as follows:

"Ques. Now, in the signing of the mortgage on the Morse property, and James and his wife signing

it, you may state how that happened. Ans. Because the deed was taken in my husband's name, and it was necessary to have their signatures. I could n't borrow money without.''

We pass now to the legal questions arising upon the record presented by the plaintiffs in error. The conveyance of the land in dispute recites that it was made in consideration of the sum of $3150. This was more by several hundred dollars than the total amount which Louisa E. Mead had received from her father's estate, together with the interest on it prior to the purchase of the land, and assuming that all her money, principal and interest, was invested in the land, it would appear, so counsel for plaintiffs in error claim, that the husband, George F. Mead, likewise invested some of his own money in it, and was therefore the equitable as well as the legal owner of part of it. This claim rests upon the assumption that the recital in the conveyance of the amount of the consideration or purchase-price of the land was binding upon the defendant in error, the plaintiff below. This is not the case. The defendant in error was a stranger to the deed, and therefore was not bound by its recitals; nor were they admissible in evidence against her. ( 2 Devl. Deeds, §§ 820, 821 ; 2 Whart. Ev., §§ 1041, 1042.)

It was also argued that the plaintiff was estopped from claiming the land on account of her having procured the defendant, James L. King, and his wife to join with her in signing the notes for $1000 and the mortgage upon the land. An estoppel by deed and also an estoppel *in pais*, or in equity, are both claimed. It is clear that there was no estoppel by deed. Louisa E. Mead testified that her reason for procuring King and his wife to join in the mortgage was that the land stood in her deceased husband's

name, and the land appearing therefore to have descended to his heirs, of which King's wife was one, she could not do otherwise than procure them to execute the mortgage jointly with herself.  This was a reasonable explanation, and appears to have satisfied the court below as against the conflicting testimony. The action not being upon the instrument upon which the claimed estoppel arises, evidence explanatory of its execution was admissible.  (Bigelow, Estoppels, 3d ed., 289.)  A leading case on this subject is *Carpenter v. Buller*, 8 M. & W. 209.  It was there ruled:

"A party to an instrument is not estopped, in an action by the other party, not founded on the deed, but only collateral to it, to dispute the facts he had admitted; but evidence of the circumstances under which such admission was made is receivable to show that the admission was inconsiderately made, and not entitled to weight as proof of the fact that it is used to establish."

Nor do the circumstances under which King and his wife signed the notes and mortgage justify the claim of an estoppel in equity.  Money was needed to discharge a lien in owelty of partition which rested upon the eighty acres of land which had been set apart to Stella Gertrude King and her mother, the defendant in error.  It was also needed to pay the debts of the deceased George F. Mead which constituted charges against his estate in which Stella Gertrude was interested as an heir.  There was reason, therefore, for the borrowing of money by King and his wife as well as by the defendant in error, and reason for the execution of a mortgage upon land to secure the amount borrowed, if it could not be otherwise obtained, and there seemed to be a concurrence of view by the interested parties that it should be obtained by mortgage.  Whether King and his wife signed the notes as surety for the

defendant in error or whether as principal makers does not appear. If they signed as sureties, it is difficult to understand how an estoppel in equity can arise in their favor. If they signed as principal makers, it was to better their own estate, or at least the estate of Stella Gertrude, by discharging liens which rested upon it. An estoppel in equity occurs where one party has induced another, by representations or statements of fact, to alter his situation to his disadvantage — to do something he would not otherwise have done. The evidence in this case upon which the claim of equitable estoppel is predicated, all of which has been hereinbefore quoted, is too meager and pointless to justify the claim that King and his wife signed the mortgage notes upon the strength of any belief that they were part owners of the land, created in their minds by the statements of the defendant in error. King testified :

"She ( Louisa E. Mead ) told us one day we would have to go to town with her that afternoon and sign the papers for that mortgage on that farm, the Morse eighty, as we had as much interest in it as she had, and she could n't get the money unless we did.

"Ques. State to the court if you relied and acted upon that request. Ans. We did."

The statement of the defendant in error thus made to the plaintiff in error was characterized by him as a "request." What was meant by "request" we do not know. Whatever meaning the plaintiff in error attached to it, he relied and acted upon it, so he says ; but by it did he mean Louisa E. Mead's admission of title to the land, or by it did he mean her expression of desire to have himself and wife join in the execution of the notes and mortgage, or did he mean both? Unless he relied and acted upon something to his prejudice there was no estoppel created, and, considering

all the circumstances of the case and the fact that the court below heard the testimony of the witnesses, and was therefore better able than we to interpret their meaning and weigh their testimony, we cannot say that facts sufficient to create an estoppel were proved.

The statute of limitations was pleaded as a defense to the plaintiff's action.   The only statute of limitations that can apply to such kind of case is that of fifteen years.   The conveyance of George F. Mead had not been of record that length of time when the action was commenced.

Many claims of error are made upon the court's findings, and upon its refusal to find as requested by plaintiffs in error.   Many of these claims are subsidiary or incidental to the questions we have thus far considered ; others raise nothing but disputed questions of fact. . None of them, however, is well founded, and the judgment of the court below will be affirmed.