No. 18,953.

THE WOODS-EGAN LIVE-STOCK COMMISSION COMPANY, *Appellant,* v. B. H. HICKS (J. E. ELMORE, Interpleader, *Appellee*).

SYLLABUS BY THE COURT.

ATTACHMENT—*Claim by Third Person—Forthcoming Bond—Interplea—Estoppel.* Cattle belonging to E. were attached in the possession of the defendant H. Each advised the plaintiff's agent and the sheriff of E's ownership, whereupon the sheriff demanded and was promised an indemnifying bond, which was afterwards furnished. In order that the defendant H., who had purchased the cattle for E., might retain possession, E. gave a bond conditioned as required by section 200 of the civil code, but which contained a recital that the property

of the defendant H. had been attached and was "bound there-
for." Shortly thereafter he filed an interplea setting up his
title to the cattle, to which the plaintiff pleaded the bond and
the recital therein by way of estoppel. Judgment was ren-
dered for the plaintiff against H. in the main action. *Held,*
that as the plaintiff company was fully advised of the inter-
pleader's claim before the levy was made, and was in no way
deceived or induced to change its position to its own injury
by any statement or conduct of the claimant, the latter was
not estopped to assert his title.

Appeal from Rush district court; Albert S. Foulks,
judge. Opinion filed July 7, 1914. Affirmed.

*S. I. Hale,* and *G. R. McKee,* both of La Crosse, for
the appellant.

*W. H. Russell,* and *Frank U. Russell,* both of La
Crosse, for the appellee; *C. W. Burch,* and *B. I. Lito-
wich,* both of Salina, of counsel.

The opinion of the court was delivered by

West, J.: The plaintiff sued Hicks for a balance due
on a promissory note and filed an affidavit for attach-
ment. The return of the sheriff stated that thirty-four
head of cattle, the property of Hicks, were levied upon.
Elmore, the interpleader, gave a bond which recited
that "an order of attachment has been issued in said
action, and the property of said B. H. Hicks has been
attached, and is now bound therefor, which property
the sheriff of said county now returns to the said B.
H. Hicks, defendant in said action," and which bound
the obligors "that said property or its appraised value
in money shall be forthcoming to answer the judgment
of said court in said action." The bond was given on
October 19, 1912, and on November 18 Elmore asked
leave to intervene, alleging that he was the owner of
twenty-three head of the cattle attached. His inter-
plea was verified, and the plaintiff answered by the
verified allegation that Elmore was estopped from
claiming the property by reason of having given a

forthcoming bond for its return by the sheriff as the property of Hicks, which was returned to him by virtue of the bond. To this answer a verified reply was filed by way of denial, but admitting the giving of a bond that the attached property might not be moved from the place where it was found, and alleging that at the time of the levy the interpleader notified the sheriff of his ownership. The court made findings of facts from which it appears that in September, 1912, Elmore and Hicks entered into an agreement by which the latter was to buy cattle for the former. Elmore provided what he called a cattle account and replenished the same from time to time with his checks and with the money received for cattle purchased by Hicks with the cattle fund. In buying cattle the checks were written and signed by Hicks but on the lower left-hand corner of each were written the number of cattle and the letters J. E. E. Of the thirty-four cattle seven belonged to a third party and were afterwards sold by the mortgagee, and four belonged to still another party and were delivered to him, but the twenty-three head of cattle involved were the property of Elmore, and Hicks had no title thereto whatever. An agent of the plaintiff went with the sheriff to the Hicks place and levied upon the thirty-four head of cattle after having met Hicks who informed them that he had no cattle of his own and that those on his place belonged to Elmore. Before the levy was made Elmore himself went to the Hicks place and there informed the sheriff and the plaintiff's agent that twenty-three head of the cattle about to be levied upon belonged to him. The sheriff refused to levy without an indemnifying bond which was promised by the agent and afterwards given. The sheriff then levied upon all of the cattle and informed Elmore that he would remove them from the Hicks place unless a forthcoming bond should be given by Elmore. The latter then stated that he would give a bond to prevent the removal of his own cattle. He, to-

gether with the sheriff and the agent, then went to Elmore's bank in the evening, after it was getting dark, where the sheriff prepared a bond which Elmore signed without reading it and which covered all the cattle attached. There was no dispute whatever as to the ownership of the cattle in question or the remainder making up the thirty-four head. The trial court decided that Elmore was not estopped from claiming the twenty-three head of cattle found to be his. The plaintiff, appeals and insists that by the settled law of this state the interpleader is estopped.

We will notice each of the decisions relied upon to sustain the plaintiff's position. In *Nye v. Weiss,* 7 Kan. App. 627, 53 Pac. 152, a redelivery bond in replevin was involved, and it was held that the defendant was estopped to deny his possession of the property at the beginning of the action. In *Haxtun v. Sizer,* 23 Kan. 310, the property was attached as belonging to the defendant. A bond was given by a third party, reciting that it had been so attached and that as the sheriff had delivered it to the obligor it should be forthcoming to answer the judgment of the court in the action, or in default thereof its appraised value would be paid to the plaintiffs. After the property had been returned to the obligor judgment was obtained against the defendant in the action. Five months after making the bond the maker filed an interplea, claiming the property attached, and asked that the attachment be discharged as to such property. To this the plaintiff answered, setting up the bond, the delivery of the property, and alleging that the maker of such bond converted the property and failed to comply with the undertaking. A demurrer to this answer was sustained, and this was held to be erroneous, the syllabus reciting that "by the admission, promise, and conduct of D. & Co. they are estopped from denying that the property belongs to S." The opinion cites and follows *Sponenbarger v. Lemert,* 23 Kan. 55, involving a redelivery bond in a case before

a justice of the peace, in which it was said the makers substantially admitting that the property belonged to French estopped them from afterwards denying that it belonged to him. "Parties can not be allowed to gain advantages (the possession of the property levied on) by making admissions, and then to deny the truth of such admissions, to the injury of others who relied upon their truth, and who had a right to rely thereon." (p. 62.) In *Wolf v. Hahn*, 28 Kan. 588, the attachment was levied upon property in possession of Hahn, who went to Wells and induced him to execute a bond for the forthcoming of the property or its appraised value to answer the judgment. The constable returned the property to Hahn, who kept it till after the judgment had been rendered, and then delivered it to the constable, by whom it was sold. After the sale Hahn sued the constable to recover the value of the property, and it was held that he was estopped, although he had not signed the bond himself, as the property was in his possession at the time of the levy, and he procured the bond to be executed and thereby reacquired possession. Hahn was not a defendant in the original action, but the levy was made upon the property in his possession. In *Case, Bishop & Co. v. D. M. Steele & Co.*, 34 Kan. 90, 8 Pac. 242, Steele & Co. sued Doty Brothers & Co. and attached certain barbed wire which was then in possession of Case, Bishop & Co., having been mortgaged to them by the Doty firm. Less than one month later Case, Bishop & Co. executed a forthcoming bond, conditioned that they should hold the property and return the same or the appraised value thereof if the court should so order, and comply with the orders and judgments of the court in relation thereto. In pursuance of this bond the wire was redelivered to the obligor, who afterwards filed an interplea, claiming the property under the chattel mortgage. The plaintiff answered, setting up a general denial, alleging that the mortgage was fraudulent, and estoppel by reason of

the bond. Afterwards judgment was rendered for the plaintiff in the original action. After that a trial was had upon the interplea, resulting in a holding by the trial court that Case, Bishop & Co. were estopped by reason of having given the bond. This ruling was affirmed, although it was urged that D. M. Steele & Co. were not induced to change their condition in any way and that the sheriff was informed of the claim of the mortgagees before the levy was made. The court said that when Case, Bishop & Co. gave the bond they virtually admitted thereby that the property belonged to the defendants and was subject to the levy, and virtually abandoned all claims under their chattel mortgage, "otherwise, they should not have given the bond, but should at once have filed their interplea, or commenced an action of replevin for the property, or commenced an action in the nature of trover for damages." (p. 94.) Referring to the fact that the sheriff and the plaintiffs had been informed that the obligors claimed the property under their chattel mortgage, the court remarked (p. 95) that the plaintiffs, however, claimed that the mortgage was void, and that this was tacitly admitted by giving the bond for the return of the property, and added:

"Bonds are not made to be violated with impunity. Bonds should mean something; and when parties execute them, they should intend to fulfill them. If they bind themselves to return the property or its appraised value, they should do so. They should not be allowed to get the possession of the property by agreeing to return it or its appraised value when they never intend to return either. Parties should act in good faith; but if they do not, then the laws should be such as to compel them to do so." (p. 96.)

In the case of *Peterson v. Woollen,* 48 Kan. 770, 30 Pac. 128, it was held that one who had signed a redelivery bond as surety was estopped from claiming the property as against the officers and the attaching creditor, although such surety had been induced to sign

the bond by misrepresentation of the attaching officers as to the legal effect of signing it. It seems that Case, Bishop & Co. sued Peterson and attached certain property as belonging to him, and his wife joined with him in executing a redelivery bond. It was alleged that the officers told the wife that if she would sign the bond she could keep the property, but otherwise it would be taken away from her; that if she signed she would save her property, and that signing of the bond would not affect her rights therein or prevent her from claiming the same. This was regarded as mere opinion, and it was said that she knew the circumstances and knew, if such was the fact, that the property attached belonged to her; that she had no right to rely on the opinion of the officers or any persons whose interest was adverse to her own, and such reliance would not aid her in avoiding the estoppel created by signing the bond.

In 1877 provision was made by statute for an interplea by any person claiming property attached. (Laws 1877, ch. 137, § 1.) The present civil code (§ 45) gives the right to any person claiming property attached as the property of another. So, unless the interpleader was barred by his own estoppel, he had a statutory right to proceed as he did. Section 200 of the civil code provides that the sheriff shall deliver the property to the person in whose possession it was found, upon his executing in the presence of the sheriff an undertaking conditioned that the property, or its appraised value in money, shall be forthcoming in answer to the judgment of the court in the action. The theory of the plaintiff appears to be that as the bond recited that the property of Hicks had been attached and was bound by the order of attachment, Elmore thereby estopped himself from claiming otherwise and that the bond obligated him to see that the property attached, or its appraised value, should be forthcoming to satisfy the judgment.

The defendant argues that unless Elmore in some way induced the sheriff or plaintiff to rely on the re-

cital, neither could have been harmed by his subsequent claim of ownership. The plausibility of this argument is increased by the facts that the sheriff and the plaintiff's agent had full knowledge in advance, from Hicks and Elmore both, that the cattle now under consideration belonged to Elmore; that an indemnifying bond was required, and after the forthcoming bond was given the sheriff remarked to Elmore that he would have to fight it out with the plaintiff's agent.

In *Manufacturing Co. v. Bean*, 20 Mo. App. 111, under statutes very similar to sections 45 and 200 of our civil code, it was held that one who gave a forthcoming bond as trustee for attached property, and before the cause came on for trial obtained leave to interplead as trustee for his beneficiary, was not estopped so to do. The bond there also recited that the property had been attached as that of the defendant. It was said that had he made no claim to the property he would have been estopped from claiming it as his own, but having given written notice, verified by his affidavit, of his claim to the property seized by the sheriff, which notice was certified to in the return, he would not be estopped; that by interpleading in the action he did not attempt to dispose of the property contrary to any judgment that might be rendered, but asked the court to render judgment in favor of his right to the property.

"Had such judgment been rendered it would hardly have been contended that the interpleader would have failed to comply with the obligations of the bond. . . . The judgment of the court was to be in accordance with the rights of all the parties in interest. By his interplea the interpleader placed the property subject to the order of the court, which was a compliance with, and not a violation of, the terms of the bond." (p. 119.)

To a similar effect is the decision in *Mansur v. Hill*, 22 Mo. App. 372. In *Huels v. Boettger*, 40 Mo. App. 310, it was held that when the owner of property levied upon by writ of attachment against a third person,

was in possession at the time of the levy and verbally notified the attaching officer of his title, neither his giving a forthcoming bond and surrendering the property on the order of the court nor his failure to claim the same in writing will estop him from claiming it after such surrender. In *Petring v. Chrisler*, 90 Mo. 649, 3 S. W. 405, it was decided that in the absence of a showing that the attachment creditor was deceived or in some way induced to alter his position to his own injury or prejudice with reference to the property of his debtor in consequence of giving the delivery bond by the interpleader the latter will not be estopped from asserting title to the property. In *Bleven v. Freer*, 10 Cal. 172, the owner of property attached as that of another gave an accountable receipt for its delivery to the officer, reciting that it had been levied upon as the property of the debtor, and it was held that if he had made known his claim to the officer before giving the receipt he would not have been estopped from afterwards asserting it. (See, also, *Tuttle v. Wheaton*, 57 Iowa, 304, 10 N. W. 748.)

It will be observed that in the Haxtun case there was an allegation that the claimants converted the property to their own use and failed to comply with the bond, and the estoppel was based upon the "admission, promise and conduct." In the Hahn case the claimant kept the property until after the judgment, and then delivered it to the constable, who sold it, and it was not until after all this had been done that the claimant sued to recover the full value of the property. In the Peterson case the defendant's wife, who claimed the property attached, sought to relieve herself from the estoppel caused by signing the bond by throwing the responsibility upon the sheriff who gave her certain legal advice which turned out to be unsound. Indeed she claimed that she was induced to sign by fraudulent misrepresentation of the officers who took it, and this appears to have been the vital issue tried and de-

termined. It is proper to observe also that the bond in this case was not strictly a statutory one. It did not need to contain the recital as to the defendant's ownership. Indeed the statute (Civ. Code, § 200) seems to contemplate and provide only for a bond given by one in whose possession the property is found—in this case, Hicks. In the Case, Bishop & Co. decision—the one most strongly relied on—it was stated that when the chattel mortgage was executed the mortgagors were insolvent. The mortgage covered their entire stock of hardware which was all the property they owned subject to the payment of debts. While the mortgagees asserted their claim before the levy was made, the plaintiffs regarded the mortgage as void, and the court deemed the execution of the bond a tacit admission of such invalidity. And in concluding the reasons why they should be deemed estopped it was said: "Parties should act in good faith; but if they do not, then the laws should be such as to compel them to do so." (34 Kan. 96.) This indicates that the real basis for the estoppel was not mechanical but moral—not technical but substantial. The general rule was stated in *Dent v. Smith,* 76 Kan. 381, 92 Pac. 307:

"Before the acts of one person can be successfully invoked as an estoppel by another, such other must have relied upon and been prejudiced by the acts of which he complains." (Syl. ¶ 1.)

A more recent decision went upon the rule that estoppel must involve a lack of good faith or fair treatment. (*Commission Co. v. Tate,* 91 Kan. 538, 138 Pac. 602.) There an execution was issued in favor of the company and against certain parties and levied on cattle in their possession. The defendants claimed the cattle, and after the levy induced the sheriff to surrender possession to them by giving a bond reciting that they owned them and binding themselves that the property or a sufficient sum of money to answer the judgment should be forthcoming "in case it shall be

found that plaintiff is entitled to hold the property . . . or any portion or part of it" (p. 539), which bond was by the sheriff returned with the execution. The obligors filed a motion in the action claiming the property. The plaintiff objected to trying the matter by motion and sued for the amount specified in the execution. The claimants answered asserting title, and recovered. It was said while the instrument was not a forthcoming bond, the purpose was to substitute it for the property until the plaintiff's right to hold the cattle could be adjudicated, and that while the method pursued to assert title was not orthodox this did not render the owners liable to pay the defendants' debt, and "there is nothing in the conduct of the defendants on which to found estoppel, which must rest upon a basis of equity and good conscience." (p. 541.)

It is impossible to read the record before us without coming to the conclusion that the plaintiff by its agent directed the sheriff to levy upon these cattle after the fullest assertion of title by Elmore, supported by the declaration of Hicks. When the sheriff had been assured of a bond to hold him harmless he proceeded. In his return he recited the claim of Elmore and the fact that he had given a bond. In other words, without any deceit or any inducement except the desire to collect the debt the plaintiff company with its eyes open took its chances in levying upon Elmore's property to pay Hicks' debt, and now insists that the mere recital in the bond estops him from showing the very title he asserted before the levy was made. There is no claim that he misled the plaintiff or caused it to change its position in any respect to its injury. By no possible course of reasoning could any justice or equity be found in such a claim, and no decision has been cited which compels thus rewarding the plaintiff merely because a certain recital was "nominated in the bond."

The judgment is affirmed.