No. 23,986.

Jim McKie, *Appellant,* v. Ray Curtis, *Appellee.*

SYLLABUS BY THE COURT.

Landlord and Tenant — *Division of Crops — Wrongful Attachment — Forthcoming Bond—Damages—No Estoppel.* A landlord commenced an action of replevin to recover from his tenant a share of a crop raised on the leased premises, and caused the crop to be attached. The tenant gave a forthcoming bond. The only matter in dispute was the share of the crop to which each was entitled, the landlord claiming one-half, and the tenant claiming two-thirds. The landlord's action was groundless, and the attachment was malicious and without cause. *Held,* the tenant was not estopped by recitals of the bond to deny ownership and claim of ownership of more than his own share of the crop.

Appeal from Norton district court; John C. Hogin, judge *pro tem.* Opinion filed November 4, 1922. Affirmed.

*R. W. Hemphill,* and *Robert W. Hemphill, jr.,* both of Norton, for the appellant.

*W. E. Mahin,* of Norton, for the appellee.

The opinion of the court was delivered by

Burch, J.: The action was one in which a landlord combined the remedies of replevin and attachment in order to obtain his share of the crop raised by the tenant, and was defeated. The tenant claimed damages, and recovered. The landlord appeals.

The petition alleged the leasing of land to the defendant for one-half of corn to be grown; the growing of 2,500 bushels of corn, all of which had been husked; and the refusal of the defendant to deliver the plaintiff's share. The petition further alleged the defendant was removing, or intending to remove, the corn from the leased premises, with intent to cheat, wrong, and defraud the plaintiff. Possession of the plaintiff's half of the corn and, in the alternative, damages in the sum of $1,500, were prayed for. The plaintiff did not take an order for delivery, but filed an affidavit for attachment in which he asserted the defendant was intending to remove his property and the crop from the leased land. A writ of attachment was issued and served, 650 bushels of shelled corn and 600 bushels of ear corn were seized, and the defendant gave a forthcoming bond, the substance of which follows:

"And whereas an order of attachment has been issued in said action, and

the property of the said Ray Curtis has been attached and is now bound therefor, which property the sheriff of said county now returns to said Ray Curtis, defendant in said action; now we, the undersigned residents of said county, bind ourselves to said plaintiff in the sum of $2,660 (being double the appraised value of said property), that said property or its appraised value in money shall be forthcoming to answer the judgment of said court in said action."

The defendant answered that he was to give the landlord, as rent, one-third of the corn. 2,304 bushels of corn were raised, and the plaintiff's share was 768 bushels. The defendant engaged a sheller, men and teams, and began shelling the corn. The plaintiff furnished one team, attended the shelling, superintended division of the corn, two-thirds to the tenant and one-third to himself, and designated the place where his share should be piled. In the midst of the shelling, the plaintiff, maliciously and without justification or excuse, caused the wrongful attachment to be made. The defendant prayed for dissolution of the attachment, and claimed damages for injury to some crops by the plaintiff's stock, an attorney fee for resisting the wrongful attachment, and punitive damages. The reply was a general denial.

The corn was to be delivered at the plaintiff's residence, on a farm adjoining the leased land. After giving the bond, the defendant finished shelling the corn, and undertook to deliver the plaintiff's share, the first installment consisting of six wagonloads. The plaintiff refused to receive the corn, and served notice on the defendant to quit the leased premises. The defendant and two of his drivers testified the plaintiff directed the defendant to take the corn back and put it in his pile on the leased land, which the defendant did. The plaintiff denied giving direction concerning disposition of the corn. The verdict was in favor of the defendant, for $250. With the verdict the jury returned the following special findings of fact:

"1. Has plaintiff established by a preponderance of the evidence that he was entitled to one-half of the corn as rent? Answer. No.

"2. Did plaintiff McKie assist the day before this action was started in dividing the corn one-third in pile on place where shelling for himself, and two-thirds for defendant Curtis? Answer. Yes.

"3. Did defendant Curtis tender to and was he giving McKie his full share of rent due McKie the day of such shelling? Answer. Yes.

"4. Do you find by a preponderance of the evidence that Curtis was about to remove McKie's corn or any part thereof? Answer. No.

"5. Did plaintiff McKie at the time of attachment have any reasonable

McKie v. Curtis.

ground for believing that defendant Curtis was removing or intending to remove any part of McKie's corn? Answer. No.

"6. Did McKie attach defendant's corn without probable cause or without regard to the rights of Curtis? Answer. Yes.

"7. If you find the defendant is entitled to exemplary or punitive damages, at what amount do you assess them? Answer. $50.00.

"8. At the time of the commencement of this action January 17th, 1920, was the defendant Ray Curtis intending to remove the crops or any part thereof, raised on the land of Jim McKie during the year 1919, from said premises without paying the rental therefor? Answer. No.

"9. Was the defendant Ray Curtis to pay as rent to plaintiff for the land farmed to corn by said defendant, during the year 1919, one-third or one-half of the crop? Answer. One-third.

"10. If you find the defendant entitled to damages then state how much you allow for. A. For damages to barley? $100.00. B. For attorney's fees? $100.00."

The special findings and the verdict were abundantly sustained by the evidence, and the appeal is nearly as groundless as the original action. One contention is made, however, which deserves consideration. It is argued that the defendant estopped himself to deny ownership of the attached corn by giving the forthcoming bond, and placed himself in the attitude of saying. to the plaintiff, "All this corn is mine," with the result the plaintiff should have recovered the value of the landlord's share, whether one-half or one-third.

The plaintiff's argument might be met by noting the fact that he did not, either by amendment of his petition or by reply to the answer, plead estoppel. The action was based on refusal of the tenant to deliver to the landlord the landlord's share of the crop, and on threatened removal of the crop with intent to defraud. The estoppel arose after the action was commenced, and formed a new and distinct basis for recovery. If in any case estoppel is to be relied on, it should be pleaded and, a fortiori, if in this instance the plaintiff desired to shift to estoppel as the ground of his recovery, he should have pleaded it. The plaintiff's contention fails, however, for a stronger reason than fault in pleading.

In the midst of the process of shelling and dividing the corn, the plaintiff abused the processes of the law in order to compel submission to an unfounded claim to more than his share. The defendant merely maintained the *status quo* by giving the bond, which stated the truth. Property of the defendant had been attached. There was no subject of disagreement between the parties except

with respect to the share of the crop the landlord was to receive. The plaintiff knew the defendant was claiming two-thirds and no more, and was engaged in dividing the corn on that basis when the action was commenced. The plaintiff was not deceived by the bond into believing the defendant claimed all the corn, and is not in position to beseech equity to regard the bond as other than what it was, a formal instrument necessary to be given to protect the defendant's rightful possession against unwarranted and malicious seizure.

The subject of estoppel by the recitals of a forthcoming bond was thoroughly considered in *Commission Co. v. Hicks,* 92 Kan. 922, 142 Pac. 276. The decisions were reviewed, and the conclusion was reached that the doctrine ought not to be applied mechanically, as has been done in some cases. It rests upon the same substantial moral basis as other equitable estoppels. The purpose is to protect against injurious consequences of unfairness and bad faith, and one who invokes estoppel must have accepted and relied on the recitals of the bond, in genuine innocence and sincerity, to his actual prejudice. Understanding as he did the position of the defendant, and acting as he did, maliciously and without justification, the plaintiff could not qualify himself to plead estoppel.

There are numerous assignments of error. They have all been examined, and the court is satisfied that nothing complained of militated against any of the plaintiff's substantial rights.

The judgment of the district court is affirmed.