No. 27,997.

G. C. ROBERTSON, *Appellant,* v. I. F. ANDRUS, *Defendant;* and
IDA A. ANDRUS, Interpleader, *Appellee.*

(266 Pac. 53.)

SYLLABUS BY THE COURT.

1. ATTACHMENT—*Claims of Third Persons—Effect of Giving Bond.* An inter-
vener in an attachment action is not estopped to maintain her claim of
ownership of the property attached by subsequently signing a forthcoming
bond in the case as surety.

2. FRAUDULENT CONVEYANCE—*Retention of Possession—Operation by Vendor.*
The employment of the vendor by the vendee to operate a bulky piece of
personal property is not necessarily inconsistent with the provisions of R. S.
33-103 with reference to an actual and continued change of possession if good
faith and sufficient consideration are shown.

3. SAME—*Consideration—Assumption of Liability by Surety.* The assumption
of the obligation by a surety is a sufficient consideration to support a *bona
fide* sale and transfer of personal property from the principal to the surety,
even against creditors, if the amount is not unreasonable.

4. SAME—*Consideration—Evidence.* The evidence considered and held to be
sufficient to support the finding of the trial court as to the good faith of the
transaction and the sufficiency of the consideration.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opin-
ion filed April 7, 1928. Affirmed.

*Sullivan Lomax* and *Otho Lomax,* both of Cherryvale, for the appellant.

*J. A. Brady,* of Cherryvale, *John Bertenshaw* and *Kirke C. Veeder,* both of
Independence, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is by the plaintiff from a
decision of the trial court finding the property attached to belong
to an interpleader and discharging the attachment. The appellant
questions the correctness of such finding and decision because the
interpleader is estopped to claim the property after having signed a
forthcoming bond and failing to appear at the final hearing on the
issues as to ownership and dissolution of attachment; also, because
of failure of physical delivery of the personal property described in
the bill of sale, want of consideration for the purchase, and want of

Attachment, 6 C. J. p. 379 n. 66. Fraudulent Conveyances, 27 C. J. pp. 534
n. 32, 586 n. 25, 830 n. 17; 12 R. C. L. 551, 567.

good faith, especially because of the fiduciary relation existing between the purchaser and vendor.

On January 19, 1926, plaintiff sued defendant on a note dated April 16, 1923, and attached an oil- and gas-drilling rig and equipment as the property of the defendant. On or about January 28, 1926, the defendant answered, and at the same time his mother, having obtained leave, filed an interplea claiming to be the owner of the rig and equipment attached. Evidence was introduced on the interplea and the matter was taken under advisement by the court. It developed in the evidence that the defendant had purchased the rig and equipment on April 16, 1924, for $3,000 and had obtained the money to do so from a bank by procuring his mother's signature as security on a note for one year. During the year he had reduced the indebtedness by $500. The bank refused to renew or extend the note, but finally agreed to accept the obligation of his mother provided he would sell the rig and equipment to her and she would become the owner of it. This arrangement was completed and the bank prepared a bill of sale to the mother, which defendant executed and delivered to her. At that time she paid him one dollar in cash and assumed the obligation at the bank. Defendant says he told her the rig and equipment were hers. He, however, continued to operate it, making contracts, collecting for work done, paying expenses, including seven dollars a day to himself, and turning the balance over to the account of his mother, as executrix, in the bank. The rig continued to be listed for taxation as his. His mother was out a few times to the place where the rig was being used. The interplea contained a motion to discharge the attachment. Another interplea was filed by another party, and the defendant later filed a motion to discharge the attachment because the property attached was exempt. Evidence was introduced on these matters, and a decision was not rendered on any proposition in the case, except a personal judgment for plaintiff on the note, until March 8, 1927, when the interplea of the mother was sustained and the attachment on that account discharged. In the meantime, on July 10, 1926, the defendant gave a forthcoming bond for the rig and equipment and his mother signed the bond as one of the sureties thereon.

Appellant urges that the interpleader is estopped by having signed the forthcoming bond with her son, and relies strongly upon the case of *Peterson v. Woollen,* 48 Kan. 770, 30 Pac. 128. This decision and

three earlier ones in this state were carefully reviewed in the case of *Commission Co. v. Hicks*, 92 Kan. 922, 142 Pac. 276, and the principle announced in the case of *Dent v. Smith*, 76 Kan. 381, 92 Pac. 307, was there applied to all such cases. This principle, which does not seem to have been considered in these earlier cases, is as follows:

"Before the acts of one person can be successfully invoked as an estoppel by another, such other must have relied upon and been prejudiced by the acts of which he complains." (*Dent v. Smith,* supra, syl. ¶ 1.)

After such careful review and the application of the above principle the court concluded "that as the plaintiff company was fully advised of the interpleader's claim before the levy was made, and was in no way deceived or induced to change its position to its own injury by any statement or conduct of the claimant, the latter was not estopped to assert his title." (*Commission Co. v. Hicks,* supra, syl.) In a later case it was said:

"The giving of a bond by the intervener for its own benefit, conditioned that the attached property or its appraised value in money shall be forthcoming to answer the judgment of the court, did not estop it from demanding an adjudication of the ownership of the attached property." (*Smith v. Eby Construction Co.,* 104 Kan. 178, syl. ¶ 2, 178 Pac. 405.)

The theory of the rule is that the bond is not given on behalf of the attachment debtor but for the benefit of the interpleader, so as not to lose the use of the property while the question of ownership is being determined; and where the giving of the bond does not mislead the creditor there is no estoppel.

"The old law was that a contract reduced to writing and sealed was the best evidence of the truth of its recitals. Estoppel was essentially a matter of evidence, and solemnity of form was the controlling consideration. This is no longer true. Estoppel is now a matter of substantive law, and a recital in a contract is not conclusive unless it operated as a representation or warranty inducing the formation of the contract, or was itself of the essence of the contract, or, having been accepted and acted on in good faith, resulted in consequences which it would be inequitable and unjust to disturb." (*Moon v. Moon,* 102 Kan. 737, 740, 173 Pac. 9.)

"Its signers [of a forthcoming bond] were liable only in case the attachment was sustained, and any questions presented as to the validity of the writ, or as to the property involved being liable to seizure under it, should have been determined upon their merits." (*Larimore v. Parker,* 101 Kan. 729, 732, 168 Pac. 859.)

"A person cannot be estopped from claiming property by acts which have neither injured nor prejudiced the one asserting the estoppel." (*Jacquart v. Jennings,* 118 Kan. 224, syl. ¶ 2, 235 Pac. 101.)

In this same connection it is claimed this interpleader lost whatever rights she may have acquired by her interplea and the evidence in support of it by her failure to appear or be represented at the last hearing and when the case was decided. It was said by Justice Brewer in an attachment action where goods were ordered sold pending the hearing because they were perishable and one of the parties did not appear or object that "the original seizure was wrong. Defendant did not assent to it. Her silence during the continuance of the attachment, and her failure to object to any of the proceedings of the plaintiffs, give them no greater rights than they had in the first instance, and she waived none of her rights." (*McKinney v. Purcell*, 28 Kan. 446, 452.)

Appellant invokes the requirement of R. S. 33-103 to the effect that the sale or conveyance of personal property, unaccompanied by actual and continued change of possession, is void as to certain persons until it is shown that the sale was made in good faith and upon sufficient consideration. The appellant in this case was not a subsequent creditor, and has every right to require that the burden of proof as to consideration and good faith be placed upon the interpleader. The fact that the interpleader is the mother of the defendant is an additional element to be properly considered in connection with the question of good faith in the transaction. How much of a physical delivery is necessary with such bulky personal property, which is not usually housed at one's own premises, but intended to be kept where it will be useful and can be used?

"A change of location or removal of property is not in all cases necessary to constitute a valid delivery of chattels as against creditors of the vendor. Where the chattels sold are ponderous or bulky so that a removal or change of location is impossible or impracticable, an actual change of possession from hand to hand is unnecessary to pass title as against creditors of the vendor; a symbolical or constructive delivery without change of possession will be sufficient." (27 C. J. 586.)

The evidence in this case supports the general finding of the court in this particular, provided the elements of sufficient consideration and good faith can be established. It was most reasonable that the mother permit the son to continue with the use of this outfit. She was not expected to run it herself. Who more appropriately would she want to use it for her benefit than her own son, to whom it originally belonged? It is not unusual or strange that the owner of such an outfit would intrust it and its use to the operator rather

than to endeavor to make the contracts and handle the business in connection with its operation. We see nothing wrong or suspicious in the matter of the son, after telling his mother when he handed her the bill of sale that the rig was hers, being permitted by the mother to continue in the use and operation of it without her going to the spot where it was located and there complete a formal ceremony of acceptance. The formal physical delivery and acceptance is generally omitted with such personal property, and can safely be omitted except where a showing of good faith and sufficient consideration is wanting; and such failure of delivery does not even raise a presumption of fraud. (*Phillips v. Reitz,* 16 Kan. 396; *K. P. Rly. Co. v. Couse,* 17 Kan. 571.) As to the questions of consideration for the bill of sale and the good faith of the transaction, it has been said:

"Failure of consideration and fraudulent purpose in the giving of a note and chattel mortgage will not be presumed because of the relationship of the parties." (*Grisier v. Bank,* 102 Kan. 7, syl., 169 Pac. 215.)

Even if there should be fraud or suspicion of fraud on the part of the defendant, the purchase of the property may be upheld unless it is shown the purchaser had knowledge of the fraud.

"An insolvent debtor who intends to defraud his creditors may convey property to a relative who has knowledge of the grantor's indebtedness, adequate consideration having been paid, and such transfer will be upheld unless it appears that the vendee was a participant in the fraud." (*Parmenter v. Lomax,* 68 Kan. 61, syl. ¶ 2, 74 Pac. 634. See, also, *Bank v. Greene,* 102 Kan. 202, 170 Pac. 391.)

A debtor may legally prefer creditors if he has two or more, and, if honestly preferred and not overpaid, the preference is not disturbed. (*Chapman v. Farrell,* 96 Kan. 659, 663, 153 Pac. 511; *Brecheisen v. Clark,* 103 Kan. 662, 176 Pac. 137.)

Was the mother overpaid by getting the rig and equipment after it had been used for one year and assuming the obligation of five-sixths of the purchase price? That would, in most business circles, be considered a fairly good sale of a used rig. She paid one dollar and assumed the payment of the balance of the purchase price. This looks like a good and sufficient consideration. She was already liable as surety on the note of her son to pay this balance, but that does not detract from its being a good consideration.

"The liability of a surety on the obligations of his principal, and the promise of the surety to pay such obligations in the future, is a sufficient considera-

tion to support a *bona fide* sale and transfer of property from the principal to the surety." (*Smith v. Rankin*, 45 Kan. 176, syl., 25 Pac. 586.)

This is what can properly be called a fact case, and all that an appellate court can do with respect to the questions last above discussed is to determine if there was sufficient evidence to support the elements of good faith and sufficient consideration necessarily involved and included in the general finding of the trial court in favor of the interpleader. We think both these elements were well supported by the evidence, even in connection with the fact of the relation between the vendor and vendee.

The judgment is affirmed.