No. 29,777.

JAMES S. PATRICK, *Appellee,* v. THE PETTIT GRAIN COMPANY, *Appellant.*

(297 Pac. 673.)

Opinion filed April 11, 1931.

*Charles S. Fulton, W. A. Huxman,* both of Hutchinson, and *C. G. Dennis,* of Sublette, for the appellant.

*H. W. Stubbs,* of Ulysses, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action by a mortgagee of personal property for conversion. At the close of all the evidence the trial court sustained plaintiff's motion to take the case from the jury and for judgment. Defendant has appealed.

Plaintiff held a chattel mortgage on a crop of wheat grown by R. J. Miller on certain land in Haskell county, which mortgage had been duly recorded. The validity of this mortgage is not questioned. R. J. Miller and his brother harvested the wheat and stored it with the Pettit Grain Company, of Satanta. Before any of the wheat was brought to defendant its manager knew of plaintiff's mortgage. Notwithstanding that, defendant advanced certain moneys to Miller brothers on the wheat. The sum advanced, with interest thereon and storage charges for about six months, amounted to a little more than the wheat was then worth. Defendant shipped the wheat out and credited Miller brothers with the then market price of the wheat. No money was paid to plaintiff under his mortgage.

The defense was that the money was advanced to Miller brothers for harvest expenses with the knowledge and consent of the plaintiff. The real question in the case is whether defendant's evidence presented a question which should have gone to the jury. Defendant's

manager testified that he was acquainted with plaintiff and knew he had a mortgage on the wheat—"I knew that when the boys started hauling the wheat"; that he had a telephone conversation with plaintiff at some time while the wheat was being delivered to the elevator; that plaintiff called him and wanted to know if the boys were hauling their wheat. When he said, "Yes, they were," plaintiff wanted to know if they were storing it or selling it, and he said they were storing it and stated they were drawing money on it for expenses; that plaintiff said, "Be careful; I have a mortgage on it," and not to let the expenses be higher than they should be.

"Q. And he made the statement when you told him they were drawing some for harvest expenses, not to let them get too much? A. He says, 'It is all right, but be careful and not let them have any more than was necessary.' I advanced money to them for expenses in harvesting this wheat crop. I advanced them $1,089."

He further testified that a part of the money had been advanced to Miller brothers before this telephone conversation with plaintiff; that the telephone conversation did not cause him to change his method of doing business with Miller brothers; that he still went ahead and advanced them money. He was unable to state the date of that conversation, or how much wheat had been delivered to him before that date, or how much money was advanced before this conversation, or after it.

Plaintiff testified that after the harvest had been going on for some time he learned Miller brothers were taking wheat to the defendant, and called its manager by telephone, asked him if Miller brothers were delivering wheat there, and if they were storing it or selling it, and learned they were storing it. Plaintiff thought that the harvest was about over and the conversation was in August. Plaintiff testified that defendant's manager said Miller brothers were delivering wheat and he had paid them some money and that he told defendant:

"I told him the wheat belonged to me and not to pay them any money, and he said he had already paid some for expenses, and I told him I had nothing to do with expenses. I had a mortgage on all of the wheat and they were to take care of the expenses."

But we pass this evidence of the plaintiff on this point for the reason that the trial court, having taken the case from the jury and rendered judgment for plaintiff, was bound to give to defendant's testimony full faith and credence and was not authorized at

that stage of the trial to weigh the evidence of plaintiff against that of defendant.

Looking to defendant's testimony alone, does it show, or tend to show, that plaintiff waived the lien of his mortgage on this wheat, or became estopped from claiming the wheat under his mortgage? It will be noted from defendant's testimony that the harvest was well advanced before he had any talk with plaintiff. Defendant knew when the wheat was first brought there plaintiff had a mortgage on it, and almost immediately began letting Miller brothers have money on the wheat. Certainly there was no waiver or estoppel as to any money advanced to Miller brothers before this telephone conversation. It is clear, also, that defendant did not regard this telephone conversation as being anything which would cause it to change its method of doing business with Miller brothers. It went on dealing with them with respect to the wheat after this conversation just as it had done before. Even the testimony of defendant's manager was not that plaintiff said he would waive his lien. In fact, plaintiff was not asked by defendant to waive his lien on the mortgaged property, but according to defendant's testimony, was told that plaintiff had a mortgage on the property, and defendant was admonished to be careful about advancing any money. Defendant ignored this admonition and at no time reported to plaintiff the amount of money advanced. There is nothing in defendant's testimony that indicates that defendant advanced any money to Miller brothers because of what plaintiff said in the telephone conversation. Defendant is therefore not in position to contend that plaintiff was estopped to claim his mortgage lien. (See 10 R. C. L. 697; *King v. Mead*, 60 Kan. 539, 57 Pac. 113; *Commission Co. v. Hicks*, 92 Kan. 922, 142 Pac. 276; *Robertson v. Andrus*, 125 Kan. 730, 266 Pac. 53, and cases cited therein.) The most defendant's testimony tended to show was that it had a lien for money advanced inferior to the lien of the plaintiff. In that situation plaintiff could maintain the action for conversion when defendant took the property and converted it to the payment of its own lien. (*Lafcyth v. National Bank*, 53 Kan. 51, 35 Pac. 805; 11 C. J. 591; and cases collected in the annotation 43 A. L. R. 388, 395.)

When Miller brothers wanted to draw money on this wheat, which defendant knew was mortgaged, an appropriate way for defendant to protect itself in advancing money would have been to have gotten in touch with the plaintiff immediately and to have had a

definite understanding as to whether or not any money should be advanced, and if so, the specific amount. If there was any likelihood of questions to arise over such understanding defendant could have insisted that it be reduced to writing. Defendant did nothing of that kind, but advanced money to Miller brothers knowing the wheat was mortgaged to plaintiff.

Since defendant's evidence did not tend to establish the fact that plaintiff had waived his lien on the property, or had become estopped from claiming his lien, the court was justified in taking the case from the jury and rendering judgment for plaintiff.

The judgment of the court below is affirmed.

SLOAN, J., not participating.